UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICKI J. PINERO                          CIVIL ACTION

VERSUS                                   NO: 08-3535

JACKSON HEWITT TAX SERVICE               SECTION: R(3)
INC., ET AL.


## ORDER AND REASONS

Before the Court is defendants' Motion to Dismiss and
plaintiff's Motion for Class Certification.  For the following
reasons, the Court GRANTS in part and DENIES in part defendants'
motion.  The Court also DENIES plaintiff's motion as premature.


## I.    Background

This case arises out of defendants' alleged mishandling of
plaintiff's confidential personal information.  In 2006,
plaintiff visited defendant Crescent City Tax Service, Inc.,
d/b/a Jackson Hewitt Tax Service ("Crescent City"), in Metairie,
Louisiana to have her 2005 federal and state tax returns prepared

and e-filed. Crescent City Tax Service is a franchisee of defendant Jackson Hewitt Tax Service ("Jackson Hewitt"). During her visit plaintiff provided highly confidential information, including her social security number, date of birth, and driver's license number, to Crescent City. Plaintiff signed Jackson Hewitt's privacy policy, which stated that defendants had policies and procedures in place, including physical, electronic, and procedural safeguards, to protect customers' private information. Plaintiff alleges that she relied on this statement in her decision to turn over her information.

Plaintiff contends that sometime in early 2008, defendants disposed of her 2005 federal and state tax returns in a public dumpster in Gretna, Louisiana. Wilhelmina Walker found plaintiff's tax returns, as well as those of over 100 other individuals. The returns were in readable form and were not burned, shredded, or pulverized as required by federal and state law. Walker then contacted a local television news station and the sheriff's office to alert them of the documents she had found in the dumpster. The news station contacted plaintiff and returned the tax returns to her. Crescent City later issued a public statement asserting that the documents were stolen and maintaining that it takes customer privacy seriously.

On May 22, 2008, plaintiff sued Jackson Hewitt and Crescent

City in federal court. Plaintiff, on behalf of herself and others similarly situated, asserts seven causes of action against defendants. Plaintiff brings state law claims of fraud, breach of contract, negligence, invasion of privacy, violation of the Louisiana Database Security Breach Notification Law (LDSBNA), and violation of the Louisiana Unfair Trade Practices Act (LUTPA). (R. Doc. 9, Amended Complaint at ¶¶54-77, 82-86). Plaintiff also alleges that defendants' unauthorized disclosure of tax returns violates 26 U.S.C. § 6103. (Amended Complaint at ¶47).

Plaintiff seeks general damages for fear, panic, anxiety, sleeplessness, nightmares, embarrassment, hassle, anger, lost time, loss of consortium, and other emotional and physical distress. (Amended Complaint at ¶33). Plaintiff seeks special damages for credit monitoring, credit insurance, reimbursement for all out-of-pocket expenses related to notifying creditors of the improper disclosure, and reimbursement for all out-of-pocket expenses related to identity theft. (Amended Complaint at ¶33). Plaintiff also seeks declaratory and injunctive relief. (Amended Complaint at ¶¶78-81). Plaintiff has moved for class certification of her claims for unauthorized disclosure of tax returns, fraud, breach of contract, negligence, and invasion of privacy. Plaintiff now moves for class certification of her claims for unauthorized disclosure of tax returns, fraud, breach

of contract, negligence, and invasion of privacy.  Defendants move to dismiss all of plaintiff's claims.    .

## II.  Motion to Dismiss

### A.  Legal Standard

In considering a motion to dismiss, a court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 127 S.Ct. at 1965 (quotation marks, citations, and footnote omitted).

### B.  Discussion

#### 1.  Negligence

Defendants contend that plaintiff has failed to state a cause of action for negligence since the mere possibility that

personal information may be at increased risk does not constitute actual injury sufficient to maintain a claim of negligence under Louisiana law. Negligence claims in Louisiana are governed by the broad language of Louisiana Civil Code Articles 2315 and 2316. Article 2315 provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. Article 2316 provides: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." In examining claims for negligence, Louisiana courts employ a duty risk analysis. Plaintiff must show that: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard; (3) the defendant's substandard conduct was the cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

According to defendants, plaintiff cannot recover damages associated with the speculative risk of identity theft. Under Louisiana law, damages must be proved with legal certainty. *F.D.I.C. v. Barton*, 233 F.3d 859, 864 (5th Cir. 2000) (citing *Craig v. Burch*, 228 So.3d 723, 731 (La. Ct. App. 1969)).

5

Speculative damages may not be recovered. *Barton*, 233 F.3d at 864-65 (citing *Bourdette v. Sieward*, 31 So. 630 (La. 1902)). A number of courts have held that the allegation of increased risk of identity theft, without more, does not amount to actual damage. *See Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 639-40 (7th Cir. 2007) ("without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy"); *Ponder v. Pfizer, Inc.*, 522 F. Supp. 2d at 798 (plaintiff did not suffer damage since he did not allege "that someone actually used the disclosed information to his detriment"); *Kahle v. Litton Loan Servicing LP*, 486 F. Supp. 2d 705, 712 (S.D. Ohio 2007) (plaintiff cannot recover when "no unauthorized use of her personal information has occurred"); *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 781-82 (W.D. Mich. 2006) (plaintiff cannot recover for "a potential future loss which has not actually occurred"); *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006) (plaintiff cannot recover for the "perceived risk of future harm"); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 690 (S.D. Ohio 2006) ("[i]n the identity theft context, courts have embraced the general rule that an alleged increase in risk of future injury is not an "actual or imminent" injury").

The decisions of two federal district courts applying

Louisiana law are instructive.  In *Ponder v. Pfizer, Inc.*, 522 F.
Supp. 2d 793 (M.D. La. 2007), an employee brought an action under
Louisiana law against his employer, Pfizer, after files
containing personal information, including social security
numbers, were accessed and copied from a laptop computer.  The
court ruled that plaintiff's claims for "fear and apprehension of
fraud, loss of money, and identity theft; the burden and cost of
credit monitoring; the burden and cost of closing compromised
credit accounts and opening new accounts; the burden of
scrutinizing credit card statements and other statements for
unauthorized transactions; damage to [] credit; loss of privacy,
and other economic damages" failed to state a claim since
plaintiff did not allege any recoverable damages, that is, "that
someone actually used the disclosed information to his
detriment." *Id.* at 798.  In *Melancon v. Louisiana Office of
Student Financial Assistance*, 567 F. Supp. 2d 873 (E.D. La.
2008), plaintiffs brought class action claims after the Louisiana
Office of Student Financial Assistance lost some of its backup
electronic media.  The electronic media contained personal
information on individuals participating in financial assistance
and scholarship programs. *Id.* at 874.  The court found that "the
mere possibility that personal information may be at increased
risk does not constitute actual injury sufficient to maintain a

claim for negligence under the current state of Louisiana law."

This Court similarly finds that plaintiff has alleged only speculative damages. Plaintiff has not alleged that any third party accessed her information and stole her identity. Plaintiff has not alleged any concrete financial losses resulting from the alleged negligence. While plaintiff has alleged that certain individuals found her documents and returned them to her, she has not alleged that those individuals used any of her information in an unauthorized manner. That the documents were exposed to a good samaritan, who returned the documents to plaintiff, does not in itself establish damage. Accordingly, since plaintiff's damages are merely speculative, plaintiff's claim for negligence must be dismissed.

In addition, in negligence cases, Louisiana law generally does not allow recovery for emotional damage absent physical injury. The Louisiana Supreme Court has stated that, "if the defendant's conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance." *Moresi v. Dept. of Wildlife and Fisheries,* 567 So.2d 1081, 1095 (La. 1990). Louisiana courts occasionally find exceptions to this rule when there are special circumstances "which serve[] as a guarantee that the claim is not

spurious." *Id.* at 1096; *see also Graham v. Western Union*, 109 La.
1069 (1903) (allowing recovery for emotional damages resulting
from the failure to deliver a telegraph to a mother announcing
the impending death of her son); *Cooper v. Christensen*, 212 So.2d
154 (La. Ct. App. 1967) (allowing recovery for mental disturbance
after plaintiff witnessed an automobile crashing into her
residence); *French v. Ochsner Clinic*, 200 So.2d 371 (La. Ct. App.
1967) (allowing recovery for mental anguish resulting from an
unauthorized autopsy); *Grather v. Tipery Studios, Inc.* 334 So.2d
758 (La. Ct. App. 1978) (allowing recovery for photographer's
negligence regarding wedding photographs). Louisiana courts also
permit recovery for mental distress in certain breach of contract
cases or based upon a "a separate tort such as assault, battery,
false imprisonment, trespass to land, nuisance, or invasion of
the right to privacy." *Id.* at 1095. To the extent that plaintiff
seeks damages for emotional injuries caused by defendants'
alleged negligence, plaintiff's claim must be dismissed.

### 2. Louisiana Database Security Breach Notification Law

Defendants assert that plaintiff's claim under LDSBNL fails
for three reasons: 1) the LDSBNL limits recovery to actual
damages; 2) the LDSBNL applies only to computerized data; and 3)
the LDSBNL applies only to delays in notification. Under LDSBNL,

a plaintiff may bring a civil action "to recover *actual* damages resulting from the failure to disclose in a timely manner to a person that there has been a breach of the security system resulting in the disclosure of a person's personal information." La. Rev. Stat. 51:3075 (emphasis added); *see also Ponder*, 522 F. Supp. 2d at 796-98. "Breach of the security of the system" is defined to mean "the compromise of the security, confidentiality, or integrity of computerized data." La. Rev. Stat. 51:3073(2).

The Court finds that plaintiff's complaint fails under LDSBNL because it fails to allege that plaintiff's personal information was disclosed as a result of the compromise of computerized data. Although plaintiff claims that it is "undisputed" that the information contained on many of the recovered documents was stored as computerized data, plaintiff's complaint does not allege that the tax returns were disclosed as a result of a computer breach.[1] Rather, the complaint alleges that the "original and signed" returns were thrown in the dumpster and "were not burned, shredded or pulverized." (Amended Complaint at ¶28). Since plaintiff has alleged a breach of the defendants' paper records, her claim is not cognizable under the

---

[1]Plaintiff's only mention of computers in the complaint is her statement that she visited Jackson Hewitt to have her returns prepared and e-filed. (Amended Complaint at ¶21).

statute.

Further, plaintiff has failed to allege cognizable damages suffered from any breach. As discussed, *supra*, plaintiff's damages are not based on an actual injury, but the speculative future injury of identity theft. *See Ponder*, 522 F. Supp. 2d at 798 (finding that plaintiffs cannot recover for speculative future damage under the LDBSNL). Plaintiff's LDSBNL claim fails for this reason as well.

### 3. Breach of Contract

Plaintiff essentially has two contract claims: (1) a claim for breach of contract due to nonperformance and (2) a claim for fraudulent inducement to enter the contract. The Court will consider plaintiff's breach of contract claim in this section. Defendants allege that plaintiff's failure to plead actual damages requires plaintiff's breach of contract claim to be dismissed. Plaintiff argues that the claim should not be dismissed since Louisiana law permits recovery of emotional damages in certain contract cases. Louisiana Civil Code article 1998 provides:

> Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.

> Regardless of the nature of the contract, these damages
> may be recovered also when the obligor intended,
> through his failure, to aggrieve the feelings of the
> obligee.

La. Civ. Code. art. 1998. Thus plaintiff may recover for
nonpecuniary loss if she proves either that the contract was
intended to gratify a nonpecuniary interest of which the
defendants were aware or that the defendants intended to aggrieve
the feelings of plaintiff.

The Court finds that plaintiff cannot recover under the
first prong of Article 1998. Professor Saul Litvinoff has
explained that a contract intended to gratify a nonpecuniary
interest means a contract made "to satisfy an interest of a
spiritual order," and includes contracts to make works of art,
contracts to conduct scientific research, and other contracts
pertaining to sentimental matters. 6 Saul Litvinoff, La. Civ. L.
Treatise § 6.12 (2d ed.). A contract to prepare taxes hardly
fits this definition. *See also Cho v. Royal Oldsmobile, Co.,
Inc.*, 722 So.2d 1138, 1143 (La. Ct. App. 1998) (contract to
repair automobile was not intended to gratify a nonpecuniary
interest); *Young v. Ford Motor Co.,* 595 So.2d 1123, 1124 (La.
1992) (contract to buy truck was not intended to gratify a
nonpecuniary interest); *Morris v. Deluxe Check Printers, Inc.*,
395 So.2d 927, 929 (La. Ct. App. 1981) (contract to print checks

was not intended to gratify a nonpecuniary interest).  And while the Louisiana Supreme Court has recognized that contracts may be made for the gratification of both pecuniary and nonpecuniary interests, the court has stressed that mental anguish damages are recoverable only when the nature of the contract, including the facts and circumstances surrounding the formation, reflects that the obligee intended to gratify a significant nonpecuniary interest. *See Young,* 595 So.2d at 1132.  Here, plaintiff has not alleged that the contract was intended to gratify a significant nonpecuniary interest or any interest other than her desire to have her taxes returns completed.  Accordingly, plaintiff cannot recover mental anguish damages under the first prong of Article 1998.

Neither can plaintiff recover under the second prong of Article 1998.  Plaintiff has not alleged that defendants intended to aggrieve her feelings through their breach.  Plaintiff's complaint alleges:

> Defendants made representations regarding their privacy policy.  Based upon these representations, the class members obtained tax preparation services through Jackson Hewitt.  Defendants intentionally breached their agreements to the class members by failing to comply with their represented privacy policy and disclosing the tax members' tax returns and other confidential, private and financial information.

(Amended Complaint at ¶60). While plaintiff alleged that
defendants intended to breach the contract and were in bad faith,
plaintiff has not alleged that the motivating factor behind
defendants' breach was their desire to aggrieve her feelings. To
satisfy prong two of 1998, the plaintiff must show that the
breach was "*calculated* to inflict grief, vexation, or
inconvenience on the other party." 6 Saul Litvinoff La. Civ. L.
Treatise §6.16 (2d ed.) (emphasis added). Bad faith does not
necessarily equate to an intention to aggrieve the obligee's
feelings, and Louisiana courts have generally required more than
an intentional breach to find an intent to aggrieve under Article
1998. *See Ducote v. Perry's Auto World, Inc.*, 745 So.2d 229, 233
(La. Ct. App. 1999) (finding that the second prong of Article
1998 was met when, "in addition to the evidence indicative of bad
faith," plaintiff offered evidence that defendant knew that a
defective condition on a vehicle would cause recurrent breakdowns
for the plaintiff); *Nolan v. Commonwealth Nat'l Life Ins. Co.*,
688 So.2d 581, 586 (La. Ct. App. 1996) (finding that defendant
intended to aggrieve plaintiff when it intentionally deprived
plaintiff of his commissions through "fraudulent, intentional and
malicious actions").

That plaintiff cannot recover mental anguish damages does
not automatically extinguish her contract claim. Even if

plaintiff cannot recover mental anguish damages, plaintiff may recover "the damages caused by . . . failure to perform." La. Civ. Code art. 1994.  Such damages are measured by "the loss sustained by the obligee and the profit of which he has been deprived." La. Civ. Code art. 1995.  The loss sustained may include "anything given by the obligee in anticipatory reciprocation for the obligor's failed performance." 6 Saul Litvinoff La. Civ. L. Treatise, § 4.4 (2d ed.).  Plaintiff has pleaded a breach of contract and seeks as damages the "return of all fees paid to Defendants for their services and other compensatory damages." (Amended Complaint at ¶63).  Plaintiff also asks for damages related to credit monitoring, credit insurance, and reimbursement for all out-of-pocket expenses related to notifying creditors of the improper disclosure. (Amended Complaint at ¶33).

The Court finds that plaintiff's contract claim must be dismissed.  Numerous courts have held that expenses related to credit monitoring to guard against future identity theft are not compensable damages. *See Pisciotta*, 499 F.3d at 635 (finding that the costs of guarding against identity theft do not constitute the damages required to state a claim for breach of contract); *Forbes*, 420 F. Supp. 2d at 1021 (finding that the time and money spent monitoring credit does not establish damages since the

expenditure "was not the result of any present injury, but rather the anticipation of future injury that has not materialized"); *Ponder*, 522 F. Supp. 2d at 796 (holding that the burden and cost of credit monitoring do not constitute actual damages). Further, the fees plaintiff paid in exchange for tax services are not damages *caused by* the obligor's defective performance. Damages are measured by the *loss sustained* by the obligee and the *profit of which he has been deprived*. La. Civ. Code art 1995. These two measurements of damage in Louisiana law are comparable to the common law reliance and expectation interests. Here plaintiff has clearly not been deprived of a profit. In addition, the fees paid by plaintiff in exchange for tax services are not a "loss sustained" from defendants' alleged breach — although, as discussed, *supra*, they may qualify as damages sustained from defendants' misrepresentation. Plaintiff indisputably received tax services from defendants. Plaintiff's only loss in connection with the performance of the contract would be any loss she sustained because of defendants' alleged breach of the privacy policy. As the Court has discussed, *supra*, plaintiff's "loss" did not result in actual damage. Since plaintiff did not sustain damage due to the alleged breach, plaintiff cannot recover under breach of contract, and her claim must be dismissed.

### 4. Fraudulent inducement to enter a contract

Defendants contend that plaintiff has failed to plead fraud since the fraud claim requires actual damages. Defendants also aver that plaintiff has failed to plead fraud with specificity as required by Federal Rule of Civil Procedure 9(b).

Defendants mistakenly contend that plaintiff has asserted a delictual fraud claim under Louisiana Civil Code article 2315. Plaintiff actually brings a claim for fraudulent inducement to enter a contract under Louisiana Civil Code article 1953. Plaintiff seeks rescission of the contract, damages, and attorney's fees under Louisiana Civil Code article 1958. To establish fraud, a contracting party must prove "both an intent to defraud or gain an unfair advantage and actual loss or damage or a strong possibility thereof." *Golden Rule Ins. Co. v. Strauss*, 110 F.3d 793, 1997 WL 119854 at *3 (5th Cir. 1997) (emphasis added); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 438 (5th Cir. 2000) (must prove that fraud caused "actual or potential loss or damages"); *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1067 (5th Cir. 1993) (must prove that fraud caused "actual or probable damages"). Plaintiff seeks rescission and to recover the fee she paid for tax services, as a consequence of the alleged misrepresentation. Since the fees were paid in reliance on the allegedly fraudulent

representation, plaintiff could have actual damages, and her claim should not be dismissed on this ground.

Still, plaintiff's fraud claim is subject to the heightened pleading requirements of Rule 9(b). *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008) ("state-law fraud claims are subject to the pleading requirements of Rule 9(b)"). The Rule provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Fraud cannot be based on mere "speculation and conclusory allegations." *U.S. ex rel. Willard v. Humana Health Plan of Texas*, 336 F.3d 375, 385 (5th Cir. 2003). To adequately plead fraud, plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (citing *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). The pleading requirements for fraud may be relaxed where the facts related to the alleged fraud are peculiarly within the perpetrator's knowledge. *Willard,* 336 F.3d at 385 (citing *ABC Arbitrage,* 291 F.3d at 350). Here, plaintiff has sufficiently alleged the "who, what, when, and

where" elements necessary to support a claim of fraud. *See Dorsey,* 540 F.3d at 339; *Willard*, 336 F.3d at 385. Plaintiff alleges that in 2006, she visited the Jackson Hewitt office in Metairie, Louisiana and met with defendants' employee Kimberly Vazquez. (Amended Complaint at ¶¶21-22). Plaintiff alleges that Vasquez gave her defendants' privacy policy and told her that her information would not be placed in the public domain. (Amended Complaint at ¶¶23-25). Plaintiff alleges that, by misrepresenting their privacy policy, defendants were able to induce her to contract with them to complete her tax returns. (Amended Complaint at ¶55).

Still, plaintiff has not explained how or why defendants' alleged statements were misleading. Plaintiff alleges that the statements were fraudulent because defendants threw her documents in a public dumpster two years after she filed her tax returns. (Amended Complaint at ¶28). But, "[g]enerally, there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed." *Willard*, 336 F.3d at 386. Fraudulent intent may be inferred from other probative factors, such as when a short time elapses between the making of the promise and the refusal to perform it. *Id.* Such prompt nonperformance allows an inference that a defendant made a promise without any intention of fulfilling it. *See United States*

19

*v. Shah*, 44 F.3d 285, 293 n.14 (5th Cir. 1995). Here, however, plaintiff alleges that defendants' nonperformance occurred two years after they promised to protect her privacy. Thus the Court may not infer that defendants entered the promise without any intention of fulfilling it, and plaintiff's complaint offers no other explanation as to why the statements regarding the privacy policy were fraudulent. Plaintiff's bare assertion that defendants' statements were misleading because defendants failed to perform is insufficient to establish "how" defendants' statements were fraudulent. Accordingly, plaintiff has failed to allege fraud with particularity as required by Rule 9(b), and plaintiff's fraud claim must be dismissed. The Court grants plaintiff 20 days to amend the complaint to provide the particulars required by Rule 9(b).

### 5. Louisiana Unfair Trade Practices Act

Defendants allege that plaintiff's claim under LUTPA suffers the same defect as plaintiff's negligence and LDSBNL claims. LUTPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practice in the conduct of any trade or commerce. La. Rev. Stat. § 51:1405, *see also Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1331 (5th Cir. 1994) ("The real thrust of the LUTPA . . . is to deter injury to competition"). Courts determine what "unfair" and "deceptive" conduct is on a

case by case basis. *American Machinery Movers, Inc. v Machinery Movers of New Orleans, LLC*, 136 F. Supp. 2d 599, 604 (E.D. La. 2001); *Core v. Martin*, 543 So.2d 619, 621 (La. Ct. App. 1989). Louisiana courts have described a practice as unfair "when the practice is unethical, oppressive, unscrupulous, or substantially injurious." *Jefferson v. Chevron U.S.A. Inc.*, 713 So.2d 785, 792 (La. Ct. App. 1998); *Omnitech*, 11 F.3d at 1332.  A trade practice is deceptive when it amounts to "fraud, deceit or misrepresentation." *Jefferson*, 713 So.2d at 793; *see also Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000) ("To recover under LUTPA, a plaintiff must prove fraud, misrepresentation, or other unethical conduct.").  Private parties who suffer an "ascertainable loss of money or movable property" because of another party's unfair or deceptive trade practices have standing to bring suit to recover "actual damages." La. Rev. Stat. § 51:1409.  Plaintiff alleges that defendants violated LUTPA when they "falsely represented to her that they would maintain the confidentiality of her tax returns and financial and private information." (Amended Complaint at ¶84).

The Court finds that plaintiff has sufficiently actual damages under LUTPA.  Plaintiff seeks to recover the fees she paid defendants in exchange for their tax preparation services.

Since defendant's allegedly deceptive act is the misrepresentation of the privacy policy, plaintiff's "ascertainable loss" could include the fees she paid in reliance on defendants' misrepresentation. Since these fees could be actual damages, plaintiff's LUTPA claim does not fail on this account.

Because plaintiff's LUTPA claim is based on defendants' allegedly fraudulent misrepresentation, plaintiff's LUTPA claim must meet the heightened pleading requirements of Rule 9(b). For the reasons discussed, *supra*, plaintiff has failed to allege fraud with the requisite particularity. Her LUTPA claim must be dismissed. Here, too, the Court grants plaintiff 20 days to amend her complaint to conform to the pleading requirements of Rule 9(b).

## 6. Invasion of privacy

Defendant contends that plaintiff's invasion of privacy claim fails because plaintiff has failed to allege an unreasonable public disclosure of facts. Under Louisiana law, the right of privacy encompasses four different interests: (1) the appropriation of an individual's name or likeness for the use or benefit of the defendant; (2) an unreasonable intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity which unreasonably places the plaintiff in a false light before

the public; and (4) unreasonable public disclosure of private facts. *Spellman v. Discount Zone Gas Station*, 975 So.2d 44, 47 (La. Ct. App. 2007); *Jaubert v. Crowley Post-Signal, Inc.*, 375 So.2d 1386, 1388-89 (La. 1979).  In Louisiana, the right to privacy has been defined as "the right to be let alone" and "the right to an inviolate personality." *Jaubert*, 375 So.2d at 1388 (internal citations omitted).  When an individual has such a right, other members of society have a corresponding duty not to violate the right. *Id.*  Invasion of privacy is an intentional tort. *See Leger v. Spurlock*, 589 So.2d 40, 43 (La. Ct. App. 1991); 12 William E. Crawford La. Civ. L. Treatise, Tort Law § 12.23.  An actionable invasion of privacy occurs when the defendant's conduct is "unreasonable and seriously interferes with the plaintiff's privacy interest." *Id.* at 1389.

Plaintiff alleges that her claim involves an unreasonable public disclosure of private facts.  Plaintiff alleges that her personal information was intentionally dumped in a "public dumpster, with free access to any citizen." (Complaint at ¶72). Defendants assert that plaintiff's claim fails because plaintiff fails to allege that her personal information was made public. Defendants do not dispute that plaintiff's personal information was found in a dumpster and disclosed to a local news outlet.

The Court has not found any caselaw, controlling or

otherwise, with facts similar to those alleged here that states
that similar allegations do not amount to an invasion of privacy.
Whether additional factual development will support defendants'
contention that under the circumstances the information was not
made public remains to be seen.  The Court finds that at this
juncture plaintiff has made sufficient allegations to state a
claim for public disclosure of private facts.  Accordingly, the
Court DENIES defendants' motion to dismiss this claim.

### 7.    26 U.S.C. § 6103

Defendants contend that plaintiff failed to state a cause of
action under 26 U.S.C. §§ 6103 and 7431 since neither Jackson
Hewitt nor the information allegedly disclosed falls within the
scope of the statutes.  Section 6103 provides:

> (a) Returns and return information shall be
> confidential, and except as authorized by this title--
>
> (1) no officer of employee of the United States,
>
> (2) no officer of employee of any State, . . .
>
> (3) no other person (or officer or employee
> thereof) who has or had access to returns or
> return information under subsection
> (e)(1)(D)(iii), paragraph (6), (10), (12), (16),
> (19) or (20) of subsection (l) paragraph (2) or
> (4)(B) of subsection (m) or subsection (n)
>
> shall disclose any return or return information . . . .

26 U.S.C. §6103.  Under section 7431(b), a taxpayer may bring an

action for damages against any person who violates section 6103(a)(3). That subsection provides that an action may be brought only against non-government entities that fit into certain narrow categories. Plaintiff contends that defendants fit into the category outlined in subsection (n) of the statute. The subsection provides:

> Pursuant to regulations prescribed by the Secretary, returns and return information may be disclosed to any person, including any person described in section 7513(a), to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, the programming, maintenance, repair, testing, and procurement of equipment, and the providing of other services, for purposes of tax administration.

26 U.S.C. § 6103(n).

The Court finds that this category does not include commercial tax preparers. Congress enacted the statute after the IRS made tax returns "readily available" to other governmental agencies, acting as a "virtual lending library for the government." *Baskin v. United States*, 135 F.3d 338, 340 (5th Cir. 1998). The statutory aim was "to protect the information flow between taxpayers and the IRS by controlling the disclosure by the IRS of information received from taxpayers." *Stokwitz v. United States*, 831 F.2d 893, 894 (9th Cir. 1987). The statute "establishes a comprehensive scheme for controlling the release

*by the IRS* of information received from taxpayers to discrete

identified parties." *Id.*   As the Seventh Circuit has explained:

> If [plaintiff] gives his [tax] returns to a friend wh
> passes out copies at work, or to an accountant who
> relates juicy tidbits at a cocktail party, [plaintiff]
> may think himself ill used and may have remedies under
> state law, but neither the friend nor the accountant
> violated § 6103.   Congress set out to limit disclosure
> by persons who get tax returns in the course of public
> business - employees of the IRS, state employees to
> whom the IRS makes authorized disclosures, and private
> persons who obtain return information from the IRS with
> strings attached.   The statute does not forbid
> disclosure when information comes from other sources.

*Hrubec v. Nat'l R.R. Passenger Corp.*, 49 F.2d 1269, 1270 (7th

Cir. 1995).   Defendants here have not received tax returns "in

the course of public business." *Id.*   Plaintiff — not the IRS —

voluntarily gave defendants her personal information so they

could prepare her taxes.   Although defendants transmitted the

information to the IRS, they did not receive the information from

the IRS.   Thus, since section 1603 applies only to persons who

have been granted access to returns or return information *by the

IRS*, plaintiff has no claim under this statute.


**III. Class Certification**

    **A.   Legal Standard**

     Class actions are governed by Rule 23 of the Federal Rules

of Civil Procedure.   The class certification determination rests

within the sound discretion of the district court. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). The court, however, should not grant class certification unless it is satisfied, after "rigorous analysis," that all Rule 23 prerequisites have been met. *Id.* at 320 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

To be certified, the class must first satisfy four threshold requirements. A court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party seeking certification bears the burden of establishing these requirements. *Unger*, 401 F.3d at 320 (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)). If the prerequisites of Rule 23(a) are met, the proposed class must additionally satisfy one of the three provisions for certification under Rule 23(b). *Cole v. General Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007). For

certification of an injunctive class under 23(b)(2), plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  For certification of a 23(b)(3) class, the district court must make a finding that questions of law or fact common to class members predominate over questions affecting only individual members and that a class action is the best way to adjudicate the controversy. Fed. R. Civ. P. 23(b)(3); *Unger*, 401 F.3d at 320.

B.    **Discussion**

Plaintiff seeks class certification for her claims of unauthorized disclosure of tax returns, fraud, breach of contract, negligence, invasion of privacy.  Plaintiff seeks to certify the class as both an injunctive and damage class. Plaintiff also seeks to bifurcate the liability and damage portions of the trial.

The Court finds that the motions directed to class certification are premature.  The Court has now narrowed the scope of the complaint, and the parties' motions are not focused on the claims that are left.  Further, the record is not sufficiently developed to support class certification.  Little

discovery has been conducted in the matter, and plaintiff's
motion for class certification does not attach any evidence to
support the motion.  The parties are ordered to present the Court
a schedule for refiling their motion for class certification
which incorporates a period for discovery on the class issues.
The parties are further directed that any subsequent motion for
class certification is to be filed 21 days before the hearing
date.  The response will be due 15 days before the hearing date,
and the reply will be due seven days before the hearing date.
The Court will entertain no further filings after the reply.

## IV.  Conclusion

For the foregoing reasons, the Court GRANTS IN PART and
DENIES IN PART defendants' motion to dismiss, without prejudice
and with leave to amend within 20 days.  The Court DENIES as
premature plaintiff's motion for class certification.

New Orleans, Louisiana, this 7th day of January, 2009

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE