UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VICKI L. PINERO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-3535** |
| **JACKSON HEWITT, INC., ET AL** | **SECTION "R" (3)** |

**ORDER DENYING PLAINTIFF's MOTION
FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (Doc. #77)**

The Court, having considered the extensive briefing on the issue of prescription, DENIES Plaintiff's Motion for Leave to File Third Amended Complaint (Doc. #77) as futile in that it is barred by the applicable statute of limitations as explained below.

### BACKGROUND

On May 22, 2008, plaintiff filed her original class action complaint and on July 15, 2008, plaintiff filed an amended class action complaint alleging nine counts including (1) unauthorized disclosure of tax returns (fraud); (2) breach of contract; (3) negligence; (4) invasion of privacy; (5) violation of Louisiana Database Security Breach Notification Law; (6) for Declaratory Judgment; (7) Injunction; (8) violation of Louisiana Unfair Trade Practices and Consumer Protection Law; and (9) LUPTA.

On August 4, 2008, Jackson Hewitt filed a motion to dismiss which was granted in part, dismissing Count 1(unauthorized disclosure of tax returns), Count 3 (breach of contract), Count 4 (negligence) and Count 6 (breach of Louisiana Database Security Breach Notification Law). Order

1

#54. The Court denied Jackson Hewitt's motion to dismiss as to Counts 5 (invasion of privacy), Count 7 (declaratory judgment) and Count 8 (for injunction). As to Count 2 (fraudulent inducement under La. Civ. Code Art. 1953) and Count 9 (LUPTA) plaintiff was granted leave to amend to state with more particularity the claims of fraudulent inducement and to elucidate how and why defendant's statements were allegedly misleading.

On January 27, 2009, plaintiff filed her Second Amended Class Action Petition. Pursuant to a hearing before the district judge, plaintiff was again given an additional period of time within which to more particularly plead her fraud claim. *See* Transcript of the April 1, 2009 Hearing on Defendants' Second Motion to Dismiss at p. 13 [Defendant's Supplemental Exh. "A"/Doc. # 105-2].

Presently before the Court is plaintiff's proposed Third Amended Complaint which alleges a violation of L.R.S. 9:3572 (the "LA Loan Broker Statute"). Plaintiff's proposed Count 10 alleges that Jackson Hewitt violated an obligation under the aforesaid statute by engaging in loan-brokering without a proper license. The facts alleged in support of Count 10 are that, on or about January 6, 2006 (over three years ago), plaintiff visited Jackson Hewitt and obtained a "Pre-File Money Now Loan." Plaintiff alleges that Jackson Hewitt presented her with a Santa Barbara Bank & Trust (SBBT) Money Now Loan Application and Agreement. Plaintiff further states that she filled out the application and received a $438.00 check. Additionally, plaintiff's $550 "Pre-File Money Now Loan" was due on February 17, 2006. Plaintiff's allegations include that none of the non-RAL loan brokered products including Plaintiff's "Pre-File Money Now Loan" are set up to be paid directly by the IRS; therefore, defendants are in violation of the statute. Under Louisiana's Loan Broker Statute, defendants are required to be licensed as a loan broker when facilitating and brokering non-RAL loan products. Plaintiff seeks return of all fees paid to defendant (an unlicensed broker) *and damages*.

This case is in its infancy and thus the sole issue before the Court on plaintiff's Fed. R. Civ. P. 15(a) motion to amend is whether the claim set forth in Count 10 is futile.

**ANALYSIS**

Defendants contend that the aforesaid proposed claim is futile. In this regard, Jackson Hewitt submits that, assuming there is a private right of action under L.R.S. § 9:3572.1,[1] plaintiff failed to comply with LRS 9:3552, which imposes strict notice and statute of limitations requirements which are not satisfied. Defendants emphasize that plaintiff's proposed claim is time-barred under LRS 9:3552(E), which permits only sixty days since the date plaintiff's last payment was due within which to bring an action. Plaintiff's claim is barred on the face of the pleadings and thus it is the plaintiff's burden to demonstrate that the action has not prescribed.[2] Based upon the plaintiff allegations, it is clear that three years have elapsed since plaintiff's final payment and the date upon which she sought leave to amend. Plaintiff's loan was due on February 17, 2006 and plaintiff did not seek leave to amend until February 26, 2009. Alternatively, defendants contend that this is a delictual action barred by the statute of limitation (one year liberative prescription) set forth in La. Civ. Code Article 3492 which governs actions *ex delicto*.

Plaintiff contends that her proposed claim under L.R.S. 9:3572.1 *et seq.* is subject to the 10-year prescriptive period set forth in La. Civil Code Article 3499 applicable to personal actions -- i.e., the "catch-all provision" that applies to actions not specifically covered by any other

---

[1] Defendant's position is that there is no private right of action against loan brokers and that the statute specifically vests power to act in the Louisiana Commissioner of Financial Institutions through a hearing pursuant to the Administrative Procedures Act.

[2] *See Eastin v. Entergy Corp.*, 865 So.2d 49, 54 (La. 2004).

prescriptive period.³ As to the 1-year prescriptive period set forth in Article 3492, plaintiff submits that it is inapplicable because plaintiff's claim does not sound in tort. Plaintiff argues that her claim under Louisiana's Loan Broker Statute⁴ is most analogous to the *quasi*-contractual remedies of unjustment enrichment per La. Civ. Code Article 2298 and reimbursement of payment of a thing not owed per La. Civ. Code Article 2299. Finally and, in the event that this Court is not convinced, plaintiff argues that the doctrine of *contra non valentum agere nulla currit praescriptio* applies so as to suspend prescription until recently, when plaintiff learned of the defendants' failure to be properly licensed. This Court is not persuaded.

## L.R.S. 9:3552(E)'s 60-Day Peremptive Period

Defendants' argument that under L.R.S. §9:3552 (E) plaintiff's proposed claim under Louisiana's Loan Broker Statute is perempted is well-founded. Certain loan contracts and credit sales fall within the provisions of the Louisiana Consumer Credit Law, La. R.S. 9:3510 *et seq*. Sections 3516, 3519 and 3520 of the Consumer Credit Law define consumers, consumer loans and consumer credit sales, and establish the maximum interest rate that may be charged on transactions within the scope of the law. Pursuant to La. R.S. 9:3552(E), any action under the Consumer Credit Law must be brought within 60 days of the final payment on the contract, or within one year of the

---

³*See* Plaintiff's Supplemental Memorandum at p. 5 (citing *Parry v. Administrators of Tulane Education Fund,* 828 So.2d 30, 40 (La. App. 4th Cir. 2002) [Doc. #101].

⁴Plaintiff cites La. Rev. Stat. § 9:357212(D) which provides:
The contracting to receive any fee, interest, or other charge in violation of this Chapter shall result in forfeiture by the loan broker to the benefit of the aggrieved person of the entire fee, plus damages in the amount of twice the fee. In the case the fee has been paid, the person by whom it has been paid may recover from the loan broker the amount of the fee thus paid, plus damages in the amount of twice the fee. *Id.*

4

date of the violation if the transaction is a revolving loan.[5]

Plaintiff does not dispute that § 9:3572 is part of the chapter entitled Louisiana Consumer Credit Law or that it is the procedural/enforcement arm of the LCCL, which purports on its face to govern remedies and penalties applicable to violations of said law. Section 9:3552(E) imposes a 60-day peremptive period, reflecting "the legistlative intent to have such claims arising out of Louisiana Consumer Credit Law dealt with quickly."[6] In *Preferred Inv. Corp. v. Neucere,* 592 So.2d 889 (La. App. 1st Cir. 1991), the court noted that "[p]eremption is a period of time fixed by law for the existence of a right and, [u]nless timely exercised, the right is extinguished upon the expiration of the peremptive period."[7] The *Preferred* court explained:

> The leading case on peremption is *Guillory v. Avoyelles Ry. Co.*, 104 La. 11, 28 So. 899 (1900), which stated:
>> When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost. 28 So. at 901.[8]

---

[5]*See In re Keith,* 2003 WL 24027477 *2 (M. D. La. May 13, 2003).

[6]*Fidelity Funds, Inc. v. Price*, 491 So.2d 681 (La. App. 1 Cir. May 28, 1986); *see also Shelton v. Chrysler First Financial Services Corporation,* 676 So. 2d 591, 593 (La. 1996) (holding that final payment of the consumer credit contract under LSA-R.S. 9:3552(E) means the date of actual final payment in the event that a loan is prepaid).

[7]*Preferred Inv. Corp. v. Neucere*, 592 So.2d 889, 893 (La. App. 4 Cir. Dec 30, 1991) (citing Articles 3458 and 3461 for the proposition that peremption may not be renounced, interrupted or suspended), *writ denied*, 597 So.2d 1028 (La. May 01, 1992).

[8]*Id.* at 894(noting that, in *Pounds v. Schori*, 377 So.2d 1195 (La. 1980), the Supreme Court held that the six month time limitation to disavow paternity was a short one and peremptive and declaring that the main consideration is the purpose sought to be achieved by the particular limitation period involved). *See also Fishbein v. State ex rel. Louisiana State University Health Sciences Center,* 898 So.2d 1260, 1265 (La. 2005) (wherein the court determined that "[t]he prescriptive period applicable to an action is determined by the character

***

Our review of the Consumer Credit Law (C.C.L.) and the cases interpreting it lead us to the following conclusions:

(1) The C.C.L. was enacted to protect unwary consumers from credit abuses.

(2) The legislature intended to deter unscrupulous credit practices and to afford the injured consumer a means of legal redress.

(3) In furtherance of these objectives the legislature created new remedies and penalties both civil and criminal.

(4) In order to protect lenders from abuse of these new and drastic penalties, i.e., forfeiture of interest plus three times the amount of the finance charge, and attorney's fees, the legislature, in the same statute, enacted a time period within which the aggrieved consumer must file suit.

(5) This time period, *i.e.*, within sixty (60) days of final payment of the consumer credit contract, is shorter than any other prescriptive period in the Civil Code and manifests the legislative intent to have claims arising out of the C.C.L. dealt with quickly.

(6) The sixty (60) day time period within which suit must be filed meets the criteria of C.C. art. 3458 and the legal principles enunciated in *Guillory v. Avoyelles Ry. Co., supra*, *Flowers, Inc. v. Rausch, supra* and *Pounds v. Schori, supra*, and in Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986). Accordingly, we hold that the time limitation set by R.S. 9:3552(E) is one of peremption rather than of prescription.[9]

Plaintiff fails to explain why her claim against a lender under the LCCL for charging or setting improper fees is not governed by § 3552(E)'s 60-day peremptive period. Moreover, the suspensive doctrine of *contra non valentem* does not apply to peremptive periods because public policy dictates that peremption extinguish or destroy a right to legal action after passage of a specified period of time.[10]

### One-Year Liberative Prescription Per Article 3492

---

of the action disclosed in the pleadings").

[9] *Id.* at 893-94.

[10] *Brumfield v. McElwee,* 976 So.2d 234, 241 (La. App. 4th Cir. 2008) (noting that "nothing may interfere with the running of the peremptive period and that the "continuing tort" doctrine is a species of suspension based on *contra non valentem* and ineffective insofar as pretermitting expiration of any peremptive period).

Alternatively, the undersigned finds that Louisiana Civil Code Article 3492's one-year prescriptive period governing *ex delicto* claims applies. Plaintiff's allegation is that Jackson Hewitt violated the law -- *i.e.*, Louisiana's Loan Broker Statute which prescribes a specific penalty. The sole basis of the subject claim is the aforesaid statute, which makes it unlawful (wrong) to engage in loan-brokering without a proper license.[11]

The nature of the duty breached determines whether the action is in tort or in contract.[12] The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons or a violation of law.[13] Even when tortfeasor and victim are bound by a contract, courts usually apply the delictual prescription to actions that are actually grounded in tort.[14] The mere fact that the circumstances arose in the context of a contractual relationship does not make the cause of action contractual. Courts are not bound to accept a plaintiff's characterization of the nature of his cause of action if unsupported by factual allegations.[15]

Notably, Count 10 contains no allegations asserting a contractual breach by defendants. Indeed, plaintiff alleges that the loan contract was between herself and Santa Barbara Bank and Trust ("SBBT").[16]

---

[11]*See* Proposed Third Amended Complaint at ¶ 72.

[12]*Roger v. Dufrene*, 613 So.2d 947, 948 (La.1993). *See e.g.,*

[13]*Thomas v. State Employees Group Benefits Program*, 934 So.2d 753, 757 (La. App. 1st Cir. 3/24/06).

[14]*Id.*

[15]*Id. See also United Gas Pipe Line Company v. Cargill, Inc.*, 612 So.2d 783, 786 (La. App. 1st Cir. 1992).

[16]*See* Proposed Third Amended Complaint at ¶ 48.

Plaintiff also contends that her allegations support a quasi-contractual claim for unjust enrichment, subject to the ten-year prescriptive period set forth in Article 3499. As previously indicated, the Court is not persuaded. Even if plaintiff's allegations could be broadly construed to encompass such a claim, the Court concludes that any equitable action for unjust enrichment is precluded by the availability of the unambiguously-pleaded delictual action.

A court may resort to equity only where positive or express law does not apply.[17] The quasi-contractual action for unjust enrichment or *actio de in rem verso* was first defined in the seminal case of *Minyard v. Curtis Products, Inc.*, 205 So.2d 422 (La.1968). The five elements or prerequisites of an *actio de in rem verso* are that: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) *the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature*.[18] The fifth element holds that unjust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided.[19] Because plaintiff has a *delictual* cause of action, she is precluded from having an equitable remedy for unjust enrichment.[20]

On the face of her petition, plaintiff's cause of action, sounding in tort, has prescribed. When a cause of action is prescribed on its face, the burden is upon the plaintiff to show that the running

---

[17]*See* La. Civ. Code art. 4.

[18]*Minyard v. Curtis Products, Inc.*, 205 So.2d 422, 432 (La. 1968) (emphasis added).

[19]*Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir.), *writ denied*, 526 So.2d 1112 (La. 1988).

[20]*See Mouton*, 525 So.2d at 1143.

8

of prescription was suspended or interrupted in some manner.[21] Thus, the burden of proof shifts to plaintiff to establish that her claim was not prescribed. At the hearing, however, plaintiff offered no proof of the existence of the alleged contractual duty undertaken by Jackson Hewitt and no evidence of interruption of prescription.

Plaintiff has neither alleged nor proven the existence of a continuing tort for purposes of determining the issue of prescription. In order to allege a continuing tort, a plaintiff must allege both continuous action and continuous damage.[22] If the "operating cause" of the damage is discontinuous in nature, even if the damage is continuous, the continuing tort theory is inapplicable, and "prescription runs from the date that knowledge of such damage was apparent or should have been apparent to the injured party."[23]

Here, plaintiff has not alleged a continuous or repetitive operating cause of such damage. "[T]he breach of the duty to right a wrong and make the plaintiff whole [standing alone] simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor."[24]

Plaintiff asserts that prescription did not begin to run on her claims against Jackson Hewitt pursuant to the jurisprudential factor allowing the application of the doctrine, known as the "discovery rule," which may apply when the cause of action is not known or reasonably knowable to the plaintiff, even though her ignorance is not induced by the defendant. Plaintiff's argument that

---

[21]*Jonise v. Bologna Brothers*, 820 So.2d 460, 464 (La. 2002).

[22]*Abrams v. Herbert*, 590 So.2d 1291, 1294 (La. App. 1st Cir. 1991).

[23]*Crump v. Sabine River Authority*, 737 So.2d 720, 726 (La. 1999).

[24]*Id.* at 729.

9

she was unaware of the defendant's failure to be licensed until February of 2009 fails to satisfy the applicable standard.

The doctrine of *contra non valentem* is exceedingly stringent and applies only in "exceptional circumstances."[25] Moreover, the doctrine will not exempt the plaintiff's claim from the running of prescription if her ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned.[26] Plaintiff's assertion that the "discovery rule" exception of *contra non valentem* applies given the facts and circumstances alleged is not convincing.

Accordingly and for all of the above and foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Third Amended Complaint (Doc. # 77) is DENIED.

New Orleans, Louisiana, this 21st day of April, 2009.

*[signature]*
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[25] La. Civ. Code art. 3467, Official Revision Comment (d); *Eastin v. Entergy Corporation*, 865 So.2d 49, 55 (La. 2004); *Renfroe v. State ex rel. Dept. of Transportation and Development*, 809 So.2d 947, 953 (La. 2002).

[26] *Id.* (*citing Corsey v. State of Louisiana, Through the Department of Corrections*, 375 So.2d 1319, 1322 (La.1979)).