```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

VICKI J. PINERO                              CIVIL ACTION

VERSUS                                       NO: 08-3535

JACKSON HEWITT TAX SERVICE                   SECTION: R(3)
INC., ET AL.
```

## ORDER AND REASONS

Before the Court is the Motion to Dismiss plaintiff's Second Amended complaint and Strike Class Allegations of Jackson Hewitt Tax Service Inc. and Jackson Hewitt Inc. (collectively, "Jackson Hewitt"). (R. Doc. 59). Also before the Court is defendant Crescent City Tax Service, Inc.'s Motion to Dismiss plaintiff's Second Amended Complaint. (R. Doc. 87). In addition, before the Court are Jackson Hewitt's Motion to Dismiss plaintiff's Third Amended Complaint (R. Doc. 123) and Crescent City's Motion to Dismiss Plaintiff's Third Amended Complaint. (R. Doc. 127). The Court rules as follows.

**I. Background**

This case arises out of defendants' alleged mishandling of plaintiff's confidential personal information. In 2006, plaintiff visited defendant Crescent City Tax Service, Inc., d/b/a Jackson Hewitt Tax Service ("Crescent City"), in Metairie, Louisiana to have her 2005 federal and state tax returns prepared and e-filed. Crescent City Tax Service is a franchisee of defendants Jackson Hewitt Tax Service Inc. and Jackson Hewitt Inc. ("Jackson Hewitt"). During her visit plaintiff provided highly confidential information, including her social security number, date of birth, and driver's license number, to Crescent City. Plaintiff signed Jackson Hewitt's privacy policy, which stated that defendants had policies and procedures in place, including physical, electronic, and procedural safeguards, to protect customers' private information. Plaintiff alleges that she relied on this statement in her decision to turn over her information.

Plaintiff contends that sometime in early 2008, Mary Hall, the Crescent City Tax Service Director of Compliance, disposed of plaintiff's 2005 federal and state tax returns in a public dumpster in Gretna, Louisiana. Wilhelmina Walker found plaintiff's tax returns, as well as those of over 100 other

individuals. The returns were in readable form and were not burned, shredded, or pulverized as required by federal and state law. Walker then contacted a local television news station and the sheriff's office to alert them of the documents she had found in the dumpster. The news station contacted plaintiff and returned the tax returns to her. Crescent City later issued a public statement asserting that the documents were stolen and maintaining that it takes customer privacy seriously.

On May 22, 2008, plaintiff sued Jackson Hewitt and Crescent City in federal court. Plaintiff, on behalf of herself and others similarly situated, asserted seven causes of action against defendants. Plaintiff initially brought state law claims of fraudulent inducement to enter a contract, breach of contract, negligence, invasion of privacy, violation of the Louisiana Database Security Breach Notification Law (LDSBNA), and violation of the Louisiana Unfair Trade Practices Act (LUTPA). (R. Doc. 9, Amended Complaint at ¶¶54-77, 82-86). Plaintiff also alleged that defendants' unauthorized disclosure of tax returns violated 26 U.S.C. § 6103. (Amended Complaint at ¶47). Plaintiff moved for class certification, and defendants moved to dismiss all of plaintiff's claims. On January 7, 2009, the Court granted defendants' motion to dismiss with respect to plaintiff's claims of fraudulent inducement, breach of contract, negligence, and

violations of the LDSBNA, LUTPA and 26 U.S.C. § 6103, leaving only plaintiff's invasion of privacy claim. (R. Doc. 54). The Court's Order also denied plaintiff's motion for class certification as premature. Because the Court dismissed the fraudulent inducement and LUTPA claims for failure to plead fraud with particularity under Federal Rule of Civil Procedure 9, the Court granted plaintiff leave to amend the complaint with respect to those claims. (R. Doc. 54).

On January 27, 2009, plaintiff filed a Second Amended Complaint. Defendant Jackson Hewitt filed a motion to dismiss the Second Amended Complaint on February 9, 2009. (R. Doc. 59). Jackson Hewitt contends that plaintiff again failed to plead fraud with particularity and that plaintiff changed her allegations with regard to the invasion of privacy claim such that it should be dismissed as well. Crescent City Tax Service filed a motion to dismiss plaintiff's Second Amended Complaint on March 25, 2009, adopting the arguments of its co-defendant Jackson Hewitt. (R. Doc. 87). Both defendants also moved to strike the class allegations in plaintiff's Second Amended Complaint. The Court heard oral argument on Jackson Hewitt's motion to dismiss on April 1, 2009 and gave plaintiff 15 days to amend her fraud claim. (R. Doc. 97). The Court subsequently extended this deadline and ordered plaintiff to file the

4

amendments to her fraud claim no later than five days after Magistrate Judge Knowles ruled on her motion to file a Third Amended Complaint adding another claim under Louisiana law. (R. Doc. 115).

On April 21, 2009, Magistrate Judge Knowles denied plaintiff's motion to add a new claim under Louisiana law to her complaint. (R. Doc. 117). Plaintiff filed a Third Amended Complaint on April 24, 2009, pursuant to the Court's Order allowing her to amend her fraud claim. (R. Doc. 119). Defendants Jackson Hewitt and Crescent City now move to dismiss the Third Amended Complaint, which they allege was amended beyond the scope of this Court's Order allowing the plaintiff to amend her fraud claim. (R. Docs. 123 & 127). The Court will now consider defendants' various motions to dismiss and their motion to strike class allegations.

**II. Motions to dismiss**

    **A. Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads

5

facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, --- F.3d ----, No. 07-30106, 2009 WL 941505, at *2 (5th Cir. Apr. 9, 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 2009 WL 941505, at *25. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must

be dismissed.

**B. Discussion**

*1. Fraud and LUTPA*

The Court will first consider defendants' motion to dismiss plaintiff's fraud and LUTPA claims.[1] Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Fraud cannot be based on mere "speculation and conclusory allegations." *U.S. ex rel. Willard v. Humana Health Plan of Texas*, 336 F.3d 375, 385 (5th Cir. 2003). To adequately plead fraud, plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (citing *Williams v. WMX Technologies, Inc.*, 112

---

[1] Jackson Hewitt contends that plaintiff improperly amended her LUTPA claims in her Third Amended Complaint. The Court, however, gave plaintiff leave to amend her fraud claims and since her LUTPA claims are premised on fraud, she had permission to amend her complaint in this regard. Although the Court did not give plaintiff permission to amend her LUTPA claim to add an invasion of privacy aspect, her stand-alone invasion of privacy claim has long been a part of this complaint and thus this amendment to her LUTPA claim will not prejudice defendants.

F.3d 175, 177 (5th Cir. 1997)). The pleading requirements for fraud may be relaxed when the facts related to the alleged fraud are peculiarly within the perpetrator's knowledge. *Willard,* 336 F.3d at 385 (citing *ABC Arbitrage,* 291 F.3d at 350).

In its January 7, 2009 Order, the Court found that plaintiff had sufficiently alleged the "who, what, when, and where" elements necessary to support a claim of fraud. *See Dorsey,* 540 F.3d at 339; *Willard*, 336 F.3d at 385. The Court noted that plaintiff alleged that in 2006, she visited the Jackson Hewitt office in Metairie, Louisiana and met with Crescent City Tax Service's employee Kimberly Vazquez. (Third Amended Complaint at ¶¶22-23). Plaintiff alleged that Vasquez gave her Jackson Hewitt's privacy policy which stated that customer information would not be placed in the public domain. (Third Amended Complaint at ¶¶24-26). Plaintiff also alleged that, by misrepresenting their privacy policy, defendants were able to induce her to contract with them to complete her tax returns. (Third Amended Complaint at ¶55).

But the Court found that plaintiff's complaint failed to explain "how" or "why" defendants' representations in their privacy policy were fraudulent. Plaintiff's allegation that defendants did not perform their promises two years later did not show "how" or "why" defendants' statements were fraudulent when

8

they were made. Because plaintiff's allegations failed to plead fraud with particularity, the Court dismissed plaintiff's fraud-related claims. The Court will now consider whether the pleadings in plaintiff's Third Amended Complaint sufficiently plead fraud under Rule 9(b).

Plaintiff's complaint now alleges that defendants knew their representations about privacy were false because, "at the time the representations were made . . . they did *not* have in place the policies and procedures that complied with applicable law and regulations." (Third Amended Complaint at ¶26). Plaintiff alleges that, at the time the representations were made, defendants did not:

> A. Properly monitor their employees/agents to ensure necessary confidentiality and/or security protocols are followed.
>
> B. Properly discipline or reprimand for violations of confidentiality and/or security protocols. *See* Exhibit R, *in globo*, Police Reports.
>
> C. Properly store confidential customer information and documents in safe or secured locales.
>
> D. Properly monitor by alarm or otherwise their buildings, warehouses, and officers.
>
> E. Properly limit ingress and egress into company buildings, warehouses, and offices.
>
> F. Properly store confidential customer documents in locked or secured file cabinets or other secure locations.

9

G. Properly maintain a chain-of-custody of confidential customer documents.

H. Properly prohibit employees/agents from taking confidential customer documents home, or to other non-secure private and public places.

I. Properly maintain a log of where confidential customer documents are located or maintained; and

J. Properly dispose of confidential customer documents.

(Third Amended Complaint at ¶28).

Defendants contend that plaintiff's complaint still fails to allege fraud with particularity. Defendants first contend that plaintiff's complaint improperly relies on the "group pleading" doctrine prohibited by the Fifth Circuit. Defendants misapprehend the purpose of the group pleading doctrine. In the circuits in which it is allowed, the group pleading doctrine permits plaintiffs to presume that various corporate statements, such as "prospectuses, registration statements, annual reports, press releases, or other group-published information," are the collective work of certain *individuals* involved in the business of the company. *See Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004) (internal citations omitted). Thus "unattributed corporate statements [may] be charged to one or more individual defendants solely on their corporate titles." *Id*. The Fifth Circuit has rejected this doctrine, and thus does not construe allegations against the

"defendants" as imputable to any particular defendant, "unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded." *Id.* at 365.

The Fifth Circuit's prohibition on group pleading is designed to protect individual defendants against imputations of fraud based merely on their titles and collectively written documents. The corporation itself, however, "may be treated as making press releases and public statements issued by authorized officers on its behalf." *Id.* Thus it is doubtful that the prohibition on group pleading would protect either corporate defendant. But even if plaintiff is required to plead a connection between the individual corporate defendants and the fraudulent statements, plaintiff has done so. Plaintiff's complaint quotes the allegedly fraudulent Jackson Hewitt privacy policy, which states:

> This privacy policy is being provided by Jackson Hewitt Tax Service Inc., and its subsidiaries and affiliates, and/or by our independently owned and operated third-party franchisees (collectively referred to as "Jackson Hewitt," "we," "us," or "our"), and applies to our current and former customers.

(Third Amended Complaint at ¶25). This statement in the policy connects it to both Jackson Hewitt and its franchisee Crescent City Tax Service. Further, plaintiff's allegations as to "why" this representation was fraudulent are connected to both

11

defendants. Plaintiff largely claims that the statement in the privacy policy was fraudulent because of defendants' failure to maintain policies and procedures to protect customer privacy. The franchise agreement[2] attached to the complaint shows that this failure can be attributed to both defendants. The franchise agreement gave Jackson Hewitt control over many aspects of the franchisee's business. Jackson Hewitt mandated that Crescent City "operate [its] business in full compliance with all our rules, specifications, standards and procedures, including, but not limited to, those found in the Manual and other materials we provide." (R. Doc. 9-23 at ¶13.11). Jackson Hewitt exercised control over most aspects of the franchisee business, including: the furniture, equipment, and supplies used (¶13.10); customer service procedures (¶13.14.2); insurance (¶17); performance standards (¶2.3); advertising (¶6.3); office appearance (¶13.2); business hours (¶13.5); and record maintenance (¶15.3). Because the franchise agreement shows that Jackson Hewitt had control over Crescent City's general operating procedures, the failure to maintain proper privacy controls can be attributed to both it and

---

[2] In considering a motion to dismiss, the Court must limit itself to the contents of the pleadings, but it may consider attachments to the pleadings. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Because the franchise agreement was attached to plaintiff's First Amended Complaint, the Court may consider it.

Crescent City. Plaintiff's pleading does not fail on this account.

Defendants also assert that plaintiff has again failed to explain "how" the alleged statements were fraudulent. Defendants aver that plaintiff has failed to allege how the defendants' failure to comply with the policy two years later constitutes fraud. But plaintiff's new allegations, if taken as true, do show why the statements were fraudulent. Plaintiff alleges that defendants' representation that they maintained privacy policies and procedures was false because at the time they made the statements, defendants did not have certain policies that would ensure the privacy of customer information. (Third Amended Complaint at ¶¶27-28). Plaintiff's complaint then details the various policies defendants did not have in place. *See supra*. The Court finds these allegations sufficient to establish "how" defendants' statements were fraudulent.

In sum, plaintiff has sufficiently pleaded fraud with particularity and has stated facts which, if taken as true, would allow the Court to draw the reasonable inference that defendants are liable for the misrepresentation alleged. *See Iqbal,* 129 S. Ct. at 1949. Thus the Court DENIES each defendant's motion to dismiss plaintiff's fraudulent inducement and LUTPA claims.

*2. Invasion of privacy*

Jackson Hewitt also contends that plaintiff's privacy claim should be dismissed.[3] Jackson Hewitt avers that amendments to plaintiff's complaint withdrew allegations that Jackson Hewitt intentionally invaded plaintiff's privacy.[4] The complaint now alleges that defendant Crescent City is liable for the actions of Mary Hall, the person alleged to have thrown out the tax returns, based on their employer/employee relationship and that Jackson Hewitt is liable for her actions based on their principal/agent relationship. Jackson Hewitt contends that while Crescent City may be liable as Hall's employer, it cannot be liable as her principal.

Louisiana law generally permits an employer to be held liable for the damage caused by employees acting within the scope of their employment. *See* La. Civ. Code art. 2320; *Bordelon v.*

---

[3] Crescent City filed a motion to dismiss adopting the arguments in Jackson Hewitt's motion to dismiss. For this claim, however, Jackson Hewitt argues only that plaintiff's privacy claim should be dismissed against it — not against Crescent City. Because the arguments do not apply to Crescent City, the Court will consider only whether the privacy claim against Jackson Hewitt should be dismissed.

[4] Jackson Hewitt also notes that plaintiff did not receive leave to amend her invasion of privacy allegations. Because the Court finds that the amended privacy claim against Jackson Hewitt should be dismissed, the Court will not consider whether the amendments were proper.

14

*Stafford*, 1 So.3d 697 at *3 (La. Ct. App. 2008). This includes damage caused by intentional torts. *See Craft v. Wal-Mart Stores, Inc.*, 799 So.2d 1211, 1214-15 (La. Ct. App. 2001) (citing *LeBrane v. Lewis,* 292 So.2d 216, 218 (La. 1974)). A number of courts have specifically recognized that vicarious liability may attach for an invasion of privacy committed by an employee or agent. *See Love v. Southern Bell Tel. & Tel. Co.*, 263 So.2d 460, 467 (La. Ct. App. 1972) (employer was vicariously liable for employees' actions in physically intruding into another employee's house); *Bordelon*, 1 So.3d 697 at *4 (genuine issue of material fact as to whether employee was acting within the scope of his employment when he invaded plaintiff's privacy); *Fontaine v. Roman Catholic Church of Archdiocese of New Orleans*, 625 So.2d 548, 555 (La. Ct. App. 1993) (genuine issue of material fact as to whether priest was acting within the scope of his employment with the church when he invaded plaintiff's privacy).

For the employer to be found liable for an intentional tort, the employee's actions must be "so closely connected in time, place, and causation to his employment duties that it constitutes a risk of harm fairly attributable to the employer's business." *Craft*, 799 So.3d at 1215. Plaintiff's allegation that Mary Hall, the Crescent City Tax Service Director of Compliance, threw away plaintiff's tax information is sufficiently connected to her

15

employment duties so as to constitute a risk attributable to the tax preparation business. Thus, plaintiff's allegation that Crescent City's employee intentionally publicized plaintiff's private information sufficiently alleges an invasion of claim against Crescent City under a theory of vicarious liability.

Whether plaintiff has also sufficiently alleged a claim against Jackson Hewitt for Mary Hall's intentional behavior is a different matter. Jackson Hewitt was Crescent City's franchisor. Their franchise agreement specifically provided that Crescent City was responsible "for all decisions regarding hiring, firing, training, supervising, disciplining, scheduling and paying wages to and withholding and paying taxes for your employees." (R. Doc. 9-23 at ¶13.6). The agreement further stated that "[n]either you, nor your manager or your employees shall be considered or represented as our employees or agents." (R. Doc. 9-23 at ¶13.6). Neither the franchisee, nor its employees, were authorized to enter into contracts on Jackson Hewitt's behalf. (R. Doc. 9-23 at ¶13.7). The agreement had two provisions relating to franchisee employees. It required franchise managers to attend and complete "Franchisee Initial Training." (R. Doc. 9-23 at ¶11.2). It also required Crescent City to sign agreements with its employees in which the employees promised not to disclose the identities of customers, the tax return information of customers, trade

16

secrets, customer lists, mailing labels, W-2s, 1099s, 8453s, bookkeeping files, financial products applications, the contents of the Jackson Hewitt manual, and any documents related to services performed on behalf of customers. (R. Doc. 9-23 at ¶¶12.3.1, 19).

The Court finds that plaintiff has not stated a claim against Jackson Hewitt for invasion of privacy. It is clear from the franchise agreement that Jackson Hewitt was not Hall's employer. The only other basis for liability would be a principal/agency relationship. An agent is one who acts for or in place of another by authority from the latter. *Cross v. Cutter Biological, Div. of Miles Inc.*, 676 So.2d 131, 147 (La. Ct. App. 1996). Even if the Court assumes that Hall was Jackson Hewitt's agent, under Louisiana law, a principal/agent relationship is not alone sufficient to sustain a claim for vicarious liability. Liability for the tortious conduct of an agent does not flow from the principal-agent relationship. *See Rowell v. Carter Mobile Homes, Inc.*, 500 So.2d 748, 751 (La. 1987); *Blanchard v. Ogima*, 215 So.2d 902, 904 (La. 1968); *Urbeso*, 583 So.2d at 117. A principal is liable for the torts of its agent "[o]nly when the relationship of the parties includes the principal's right to control physical details of the actor as to the manner of his performance which is characteristic of the relation of master and

servant." *Rowell*, 500 So.2d at 751; *see also Urbeso*, 583 So.2d at 117-18 ("[t]o establish a principal's liability, the agent must be a servant who has a close economic relationship and is subject to control by the principal"); *Henry v. Taco Tio, Inc.*, 606 So.2d 1376, 1381 (La. Ct. App. 1992) (finding that franchisor was not liable for tortious act of franchisee's employee since, even if employee was franchisor's agent, they were not in a master/servant agency relationship); *Scoggins v. Smith*, 342 So.2d 1130 (La. Ct. App. 1977) ("[u]nless the agent may also be deemed a servant or employee of the principal, his negligent acts may not be imputed to his principal"); *Illinois Central R.R. Co. v. JP Trucking*, 2006 WL 304560, at *6 (E.D. La. 2006) (Barbier, J.) (citing *Rowell* and noting that the dispositive issue in deciding whether a principal is liable is the question of control).

Here, plaintiff has not alleged facts tending to suggest that the relationship between Hall and Jackson Hewitt was in the nature of master-servant. Plaintiff has conclusorily alleged that Jackson Hewitt was plaintiff's "employer/principal" and has attached an agreement that directly contradicts this assertion. The allegation of such a relationship is apparently based on Jackson Hewitt's status as the franchisor of Crescent City. Plaintiff has pleaded no other facts to support such an assertion. Plaintiff has pleaded no facts suggesting that

Jackson Hewitt exercised any control over Hall in the details of the performance of her job. And the franchise agreement plaintiff attached to her complaint contradicts her allegations of a master-servant relationship. (R. Doc. 9-23). As cited, *supra*, the agreement specifically states that Jackson Hewitt does not have an employer or principal relationship with Crescent City's employees. The agreement also states that Crescent City is responsible for all decisions regarding the hiring, firing, supervising, disciplining, and training of its employees. (R. Doc. 9-23 at ¶13.6). The agreement shows that Hall was in a master-servant relationship with Crescent City, not Jackson Hewitt. Absent allegations that indicate that Jackson Hewitt controlled Hall in the performance of her job, the Court finds that plaintiff has not stated a claim for relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Plaintiff's privacy claim against Jackson Hewitt must be dismissed.

**III. Motion to strike class allegations**

Defendants also move to strike the class allegations in plaintiff's Second Amending Complaint. In its previous Order, the Court found that plaintiff's class certification motion was premature because the record had been insufficiently developed and little discovery had taken place. (R. Doc. 54). Similarly

here, the Court finds that defendants' motion to strike class allegations is premature. Defendants have yet to answer plaintiff's complaint and have moved to stay discovery until the motions to dismiss are resolved. The Court simply does not have enough evidence with which to ascertain whether plaintiff's class claims are appropriate. Accordingly, the Court DENIES defendants' motion as premature.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Crescent City's Motion to Dismiss and GRANTS IN PART and DENIES IN PART Jackson Hewitt's Motion to Dismiss. The Court DENIES defendants' Motion to Strike Class Allegations.

New Orleans, Louisiana, this 5th day of June, 2009

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE