UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VICKI L. PINERO, individually and on behalf of all others similarly situated, ) ) ) | Civil Action No. 08-03535 |
| ) | Sec. R |
| Plaintiffs, ) ) | JUDGE SARAH S. VANCE |
| v. ) ) | Mag. 3 |
| JACKSON HEWITT TAX SERVICE INC.; JACKSON HEWITT INC.; and, CRESCENT CITY TAX SERVICE, INC. d/b/a JACKSON HEWITT TAX SERVICE, ) ) ) ) ) ) | MAGISTRATE JUDGE DANIEL E. KNOWLES, III |
| Defendants. ) | |

**MEMORANDUM IN OPPOSITION TO**
**MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH**

Plaintiff, Vicki L. Pinero, submits this memorandum in opposition to the Motion for Protective Order and Motion to Quash filed by defendants Jackson Hewitt Tax Service Inc. ("JHTSI") and Jackson Hewitt Inc. ("JHI") (jointly referred to as "Defendants").

## I. INTRODUCTION

Leveraging their influence and the information entrusted to them as tax

1

return preparers, Defendants have entered into numerous lucrative business arrangements with third parties—arrangements that depend upon and reward Defendants for improperly using and sharing confidential customer information with third parties. Indeed, Defendants' unlawful information-sharing-conduct lead the California Attorney General to sue Defendants 2 and ½ years ago on behalf of all California citizens.[1] This Court should not permit Defendants to continue to conceal their wrongdoing and the financial gains they have made through their unlawful information sharing agreements with third parties.

The requested information and documents are relevant and certainly discoverable. The claims against Defendants relate to Defendants' fraudulent statements about their policies and procedures for safeguarding personal customer information. In an attempt to induce Plaintiff and the class members to obtain tax preparation services through Jackson Hewitt, Defendants made the following representations:

> We maintain policies and procedures designed to restrict access to nonpublic personal information about you to those persons who need to know that information to fulfill your request for products or services. These policies and procedures include physical, electronic, and procedural safeguards that comply with federal regulations to guard your information.

These statements were contained in Defendants' "Privacy Policy" and were false when made.[2]

Plaintiff's claims relate to Defendants' false statement that they "restrict access to

---

[1] Defendants settled the lawsuit for $4 million in restitution, plus $500,000 in civil penalties and another $500,000 in attorneys' fees. *See People of the State of California v. Jackson Hewitt Inc., et al.*, Case No. 07-304558 (Cal. Sup. Ct. Jan. 3, 2007).
[2] *See* Docket No. 119, at ¶¶ 2-3, 24, 26-27, 40, 43, and 54-58.

nonpublic personal information about [a customer] to those persons who need to know that information to fulfill [a customer's] request for products or services"—yet Defendants argue Plaintiff's request for information and documents relating to Defendants' sharing of information with third parties is improper. Plaintiff's claims also relate to Defendants' false statement that Defendants' comply with federal regulations relating to safeguarding customer information, including 26 C.F.R. § 301.7216-3 which prohibits the use and disclosure of taxpayer information absent formal written consent— yet again Defendants argue Plaintiff's request for information and documents relating to Defendants' sharing of information with third parties is improper. Defendants are *wrong*.[3] Defendants' use and sharing of confidential customer information through Defendants' third-party business arrangements is at the very heart of Plaintiff's case.

---

[3] Defendants contend Plaintiff's legal theories have shifted and her factual allegations have changed over time. *See* Docket No. 172-18, at pp. 1-2. Suffice to say, this accusation is incorrect and the record speaks for itself. Defendants also contend this case allegedly hinges on the improper disposal of one box of documents. *Id.* at p. 2. As noted, the claims against Defendants relate to Defendants' fraudulent statements. Further, *numerous* boxes of tax returns and confidential customer documents were thrown away, *not* just 1 box. Citing to paragraph 3 of Plaintiff's Third Amended Class Action Complaint, Defendants mischaracterize Plaintiff's claims against Defendants by stating: "In her most recent amendment, Plaintiff makes the leap from this alleged single incident, to alleging that Jackson Hewitt has literally **no** policies in place to attempt to safeguard customer information." *Id.* (emphasis in original). This allegation is absolutely false. As noted above, and as stated in paragraph 3 of Plaintiff's complaint, "[c]ontrary to Defendants' representations, and in spite of numerous federal and state laws, regulations, and rules requiring that Defendants safeguard their customers' personal and financial information and documents, Defendants did *not* have in place at the time they made their confidentiality representations ***the promised policies and practices*** to maintain proper confidentiality and security of the highly confidential information and documents entrusted to them." Docket No. 119, at ¶ 3 (emphasis added). Simply put, this case relates to whether Defendants lied to their customers about their practices and policies for safeguarding customer information.

The requested information and documents are relevant and discoverable. Contrary to Defendants' argument, Plaintiff has the right to complete discovery regarding:

- ➢ Whether Defendants have entered into agreements to share customer information;
- ➢ Whether the agreements permit or require the sharing of customer information in a manner inconsistent with Defendants' representations and applicable laws/regulations;
- ➢ Whether the agreements require the third parties receiving the customer information to safeguard such information; and
- ➢ Whether Defendants profited in any way from their improper information sharing.

The Court should deny Defendants' Motion for Protective Order and Motion to Quash.

## II. BACKGROUND

Defendants argue Plaintiff has overburdened them with discovery. *See* Docket No. 172-18. Nothing could be further from the truth.

In an attempt to *avoid* any discovery battles, Plaintiff served laser focused discovery on Defendants. Although Plaintiff's discovery has been served in several "rounds" or "sets," *in total*, Plaintiff has propounded only 3 interrogatories, 1 request for admission, and 6 document requests on JHTSI. As to JHI, Plaintiff has propounded the same amount of discovery, plus an additional document request.

Despite Plaintiff's limited discovery, as of this filing, Defendants have *not* produced a single document to Plaintiff. And now Defendants argue the Court should quash 1 of the 3 interrogatories and 2 of the 7 document requests Plaintiff served on each

4

Defendant.[4]

Defendants also request that 2 of the topics identified in Plaintiff's corporate deposition notice to each Defendant be quashed.[5]

Finally, Defendants request that all 11 subpoenas issued by Plaintiff be quashed.[6] Contrary to Defendants' argument, the subpoenas seek only documents, *not* "testimony." Of the 11 third parties subpoenaed by Plaintiff, only 1 of the third parties has complained about or objected to the subpoena, *i.e.*, Meta Financial Group, Inc., and Plaintiff anticipates that she will be able to resolve the dispute with this third party.

### III. LAW AND ARGUMENT

As this Court has repeatedly stated, "[c]ivil discovery is *not* a game of ambush." *Vinet v. F & L Marine Management, Inc.*, 2004 WL 3312007, *3 (E.D. La. 2004) (emphasis added); *Karr v. Four Seasons Maritime, Ltd.*, 2004 WL 797728, *3 (E.D. La. 2004). Fed. R. Civ. P. 26(b)(1) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things[.]" The Rule provides "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

---

[4] *See* Docket No. 172-5, Plaintiff's Fifth Set of Disc. to JHTSI, Interr. No. 1 and Doc. Req. Nos. 2-3; Plaintiff's Fifth Set of Disc. to JHI, Interr. No. 1 and Doc. Req. Nos. 3-4.

[5] *See* Docket No. 172-6, Plaintiff's Corp. Depo. Notice to JHTSI, Topic Nos. 20 and 25; Plaintiff's Corp. Depo. Notice to JHI, Topic Nos. 20 and 24.

[6] *See* Docket Nos. 172-7 to 172-17. Plaintiff served subpoenas on the following entities: Republic Bank & Trust Company; Meta Financial Group, Inc.; Pacific Capital Bank, N.A.; HSBC Finance Corporation; Wal-Mart Stores East, LP; Wal-Mart Louisiana, LLC; Wal-Mart Stores Arkansas, LLC; Rent-a-Center East, Inc.; ACE Cash Express, Inc.; New Benefits, Ltd.; and, General Fidelity Insurance Company.

Fed. R. Civ. P. 26(b)(1). This Court recently discussed the scope of discovery as follows:

> The discovery rules are accorded a broad and liberal treatment in order to affect their purpose of adequately informing litigants in civil trials. As a result, relevancy is broadly construed and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter in the action or if there is any possibility that the information sought may lead to the discovery of admissible evidence. Thus, a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing on the subject matter of the action."

*Panama Canal Com'n v. Atlantic Shipping Agencies*, 2002 WL 31654921, *1 (E.D. La. 2002) (citations omitted).

Fed. R. Civ. P. 26(c)(1) provides, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (internal quotation marks omitted); *see also Dyson Inc. v. Oreck Corp.*, 2009 WL 2448006, *2 (E.D. La. 2009).

## A. *The Court Should Deny Defendants' Request For A Protective Order*

Defendants have entered into business arrangements with certain third parties

which permit or require Defendants to use and/or share confidential customer information. These third-party relationships, or "partnerships," are relevant and any documents establishing or discussing the relationships are discoverable. As noted, the claims against Defendants relate to Defendants' false statements that they (a) "restrict access to nonpublic personal information about [a customer] to those persons who need to know that information to fulfill [a customer's] request for products or services" and (b) comply with federal regulations relating to safeguarding customer information, including 26 C.F.R. § 301.7216-3 which prohibits the use and disclosure of taxpayer information absent formal written consent. Plaintiff seeks to merely discover how Defendants used and disclosed her and the class members' confidential information. The Court should *not* permit Defendants to hide the very information and documents which establish the falsity of their representations. The Court should deny Defendants' motion for protective order—Defendants cannot establish good cause for issuance of a protective order per Rule 26(c).

### *1. Plaintiff's Discovery to Defendants*

Defendants seek to quash 1 interrogatory; 2 document requests; and, 2 topics identified in Plaintiff's corporate deposition notices.[7] Specifically, Defendants seek to quash the following:

---

[7] *See* Docket No. 172-5, Plaintiff's Fifth Set of Disc. to JHTSI, Interr. No. 1 and Doc. Req. Nos. 2-3; Plaintiff's Fifth Set of Disc. to JHI, Interr. No. 1 and Doc. Req. Nos. 3-4; Docket No. 172-6, Plaintiff's Corp. Depo. Notice to JHTSI, Topic Nos. 20 and 25; Plaintiff's Corp. Depo. Notice to JHI, Topic Nos. 20 and 24.

7

**INTERROGATORY:**

Please identify the person(s) most knowledgeable about your marketing practices, policies, procedures, strategies, and goals.

**REQUEST FOR PRODUCTION:**

Please produce a copy of all Joint Marketing Agreements, Cross Marketing Agreements, Program Agreements, and Technology Agreements effective any time during May 22, 1998 to the present, including all amendments, supplements, addendums, and modifications to such agreements.

**REQUEST FOR PRODUCTION:**

Please produce a copy of all documents explaining, describing, or summarizing any Joint Marketing Agreements, Cross Marketing Agreements, Program Agreements, and/or Technology Agreements effective any time during May 22, 1998 to the present. Please include in your response any documents explaining, describing, or summarizing the implementation of any Joint Marketing Agreement, Cross Marketing Agreement, Program Agreement, and/or Technology Agreement effective any time during May 22, 1998 to the present.

**DEPOSITION TOPIC:**

All promotional or advertising materials for [JHTSI] [or] [JHI], including the person(s) involved in the preparation of such materials, the date(s) such materials were prepared, and the date(s) such materials were first dispersed.

**DEPOSITION TOPIC:**

All Joint Marketing Agreements, Cross Marketing Agreements, Program Agreements, and Technology Agreements effective any time during May 22, 1998 to the present, including all amendments, supplements, addendums, and modifications to such agreements.

    ***a. Plaintiff's Discovery to Defendants is Relevant***

Plaintiff's discovery seeks to obtain information and documents relating to Defendants' business arrangements with third parties which permits or requires Defendants to use and/or share confidential customer information.

8

The contested interrogatory seeks the identity of the person(s) most knowledgeable about Defendants' marketing practices, policies, procedures, strategies, and goals.[8] Marketing and use/disclosure of customer information go "hand-in-hand." Therefore, the identity of a person or persons with information regarding Defendants' marketing practices is relevant. Whomever Defendants identify in response to the interrogatory will be familiar with Defendants' "joint marketing" and "cross marketing" practices, which permit or require sharing of confidential customer information. The identified individual(s) will be able to testify about the business arrangements Defendants have with various third parties, including the process for sharing customer information. The identified individual(s) will also be able to identify related documents. The contested interrogatory seeks information relevant to Plaintiff's claims.

The 2 contested document requests are also relevant. The requests seek documents relating to Defendants' sharing of confidential customer information with third parties.[9] Specifically, the requests seek certain "Joint Marketing Agreements," "Cross Marketing Agreements," "Program Agreements," and "Technology Agreements" Defendants entered with their various business "partners," along with other documents explaining these agreements. The terms "Joint Marketing Agreement," "Cross Marketing Agreement," "Program Agreement," and "Technology Agreement" are properly limited

---

[8] *See* Docket No. 172-5, Plaintiff's Fifth Set of Disc. to JHTSI, Interr. No. 1; Plaintiff's Fifth Set of Disc. to JHI, Interr. No. 1.
[9] *See* Docket No. 172-5, Plaintiff's Fifth Set of Disc. to JHTSI, Doc. Req. Nos. 2-3; Plaintiff's Fifth Set of Disc. to JHI, Doc. Req. Nos. 3-4.

and defined in Plaintiff's discovery.[10] And Defendants admit "the requested documents include information pertaining to [Defendants'] confidential and proprietary marketing practices." Docket No. 172-18, at p. 6.

For example, Plaintiff is aware that Defendants entered into a "Joint Marketing Agreement" with Rent-a-Center, a company that rents furniture, appliances, and other items often under egregious terms. Through her 2 document requests, Plaintiff seeks a copy of the agreement with Rent-a-Center and any other documents explaining the agreement. In addition to the agreement with Rent-a-Center, Plaintiff seeks all other "joint marketing" or "cross marketing" agreements and any documents explaining the agreements. Similarly, information sharing provisions will be contained in the numerous "Program Agreements" and "Technology Agreements" Defendants entered into with third parties, which Defendants refer to as their "business partners." Docket No. 172-18, at p. 6, n. 5. Contrary to Defendants' argument, Plaintiff's 2 requests seek documents

---

[10] The terms "Joint Marketing Agreement," "Cross Marketing Agreement," "Program Agreement," and "Technology Agreement" are defined in Plaintiff's discovery as meaning "(a) any document entitled such, or including such or similar words in its title, and (b) any contract between you and another person or entity to promote, advertise, market, offer, provide, administer, arrange for, support, and/or sell (i) your products, services, resources, and/or personnel or (ii) the other person or entity's products, services, resources, and/or personnel." *See* Docket No. 172-5, Plaintiff's Fifth Set of Disc. to JHTSI, Definition (P); Plaintiff's Fifth Set of Disc. to JHI, Definition (P). In a footnote, Defendants contend this definition is vague and asks Defendants "to produce, among other things, all contracts with third parties pertaining to products or services of any kind." Docket No. 172-18, at p. 3, n. 3. The definition is not vague at all. Contrary to Defendants' argument, the definition would not require production of all contracts with third parties. Instead, the definition would only require production of any contract between JHTSI/JHI and a third party which requires either JHTSI/JHI or the third party to act as some type of "business partner" for the other and promote, advertise, market, offer, provide, administer, arrange for, support, and/or sell the other's product or service. These are the contracts that will provide for customer information sharing.

relevant to Plaintiff's claims.

The 2 contested deposition topics are also relevant. The topics relate to Defendants' marketing practices, including Defendants' sharing of confidential customer information through their "joint marketing" and "cross marketing" practices, and the terms and conditions of the various Joint Marketing Agreements, Cross Marketing Agreements, Program Agreements, and Technology Agreements Defendants have entered with third parties.[11]

Contrary to Defendants' argument, Plaintiff's discovery is clearly relevant. Plaintiff is *not* engaging in a "fishing expedition." Defendants are simply "hiding the ball."

### b. Plaintiff's Discovery to Defendants is neither Overbroad nor Unduly Burdensome

"A party resisting discovery . . . must show how each request is 'overly broad, burdensome or oppressive.'" *Frere v. Lee*, 1999 WL 544674, *1 (E.D. La. 1999); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). As this Court has ruled,

> [A]n unsupported cry of "overbroad" does not automatically render a discovery request improper. A party cannot escape compliance with discovery requests by mere assertions that a discovery request is overbroad and burdensome. In *McLeod, Alexander, Powel & Apffel v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990), the court held that to voice a successful objection to a production request, the party must do more than merely say that a production request was overly broad, burdensome, oppressive and irrelevant. Some courts have gone so far as to demand that an objection must show specifically how a request is overly broad, burdensome or

---

[11] *See* Docket No. 172-6, Plaintiff's Corp. Depo. Notice to JHTSI, Topic Nos. 20 and 25; Plaintiff's Corp. Depo. Notice to JHI, Topic Nos. 20 and 24.

oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.

*Haensel v. Chrysler Corp.*, 1997 WL 537687, *3 (E.D. La. 1997) (quotation marks, brackets, and citations omitted).

The Court should reject Defendants' unfounded claim that Plaintiff's discovery is overbroad and unduly burdensome for at least 5 reasons.

***First***, apparently Defendants contend the use of the word "all" somehow makes Plaintiff's requests overbroad or burdensome. There is no support for this contention. Obviously, Plaintiff wants and is entitled to "all," *not* just "some," of the requested documents.

***Second***, generally, when an "omnibus phrase [such as relating to or concerning] modifies a *specific type of document* or specific event, rather than a large category or all documents or events, the request is *not* deemed overly broad on its face." *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 667-668 (D. Kan. 2004) (emphasis added). Plaintiff's document requests seek specific types of documents, *i.e.*, all Joint Marketing Agreements, Cross Marketing Agreements, Program Agreements, Technology Agreements, and any documents explaining any of the agreements. Although Plaintiff's requests may seem broad, they are not because they are properly tailored to the central issue in this case—whether Defendants' statements regarding their policies and procedures for safeguarding confidential customer information are false. *See Frere*, 1999 WL 544674 at *1.

***Third***, Plaintiff's requests are properly limited in time and geographic scope.

Defendants argue only documents dating back to 2002 "could be reasonably calculated to lead to admissible evidence in this case." Docket No. 172-18, at p. 9. Defendants are wrong. As evidenced by Plaintiff's complaint, Plaintiff seeks to represent a class of "Louisiana residents who received tax preparation services through Defendants and whose tax return information, tax return, or other personal or financial information was disclosed, without consent, or mishandled during the *10-year period* prior to the filing of the complaint." Docket No. 119, at ¶ 46 (emphasis added). Further, contrary to Defendants' understanding, the improperly disposed tax returns date back to 1993, *not* 2002. In light of these facts, Plaintiff's requests are properly limited to the 10-year period prior to the filing of Plaintiff's complaint.

As to the geographic scope of Plaintiff's requests, no meaningful restriction can be placed on Plaintiff's request because of the nature of Plaintiff's claims and the nation-wide scope of Defendants' business "partnerships." Indeed, Defendants do *not* even attempt to explain how Plaintiff's requests can be limited geographically. As noted, Plaintiff's claims relate to Defendants' fraudulent statements. Any documents establishing the falsity of Defendants' statements are relevant, including any documents relating to Defendants' sharing of confidential customer information with third parties contrary to Defendants' representations to Plaintiff and the class members.

*__Fourth__*, to the extent Defendants contend any of the requested documents contain any trade secrets, Plaintiff is willing to enter into a reasonable stipulated confidentiality order.

*__Fifth__*, unless Defendants' network of business "partnerships" is larger and more

13

extensive than expected, there should be a limited number of responsive documents. Said another way, although Defendants contend Plaintiff's request is exceedingly overbroad and burdensome, Plaintiff's document request is *not* unreasonable. Defendants are simply "overstating" their case.

The Court should ignore Defendants' unsupported "cries" that Plaintiff's discovery is overbroad and unduly burdensome. *See Haensel*, 1997 WL 537687 at *3. Defendants have failed to allege with any specificity how or why Plaintiff's discovery is allegedly overbroad and unduly burdensome.

### *2. Plaintiff's Subpoenas to Third Parties*

Defendants also seek to quash all 11 subpoenas issued by Plaintiff.[12] As noted, the subpoenas seek only documents and only one third-party has complained about or objected to the subpoena. With one exception, all of the subpoenas seek the following documents:

1. Produce and permit inspection of all documents, including but not limited to all proposals, contracts, agreements, letters of understanding, correspondence and press-releases, establishing, modifying, amending, terminating or pertaining to all contracts, joint ventures, or contractual relationships you entered with JHI and/or JHTSI at any time during May 22, 1998 to the present.

2. Produce and permit inspection of all original, amended, supplemented, modified or restated Joint Marketing Agreements, Cross Marketing Agreements, Program Agreements, and/or Technology Agreements to which JHI and/or JHTSI was a party or signatory that were effective any time during May 22, 1998 to the present.

3. Produce and permit inspection of all documents explaining,

---

[12] *See* Docket Nos. 172-7 to 172-17.

14

describing, or summarizing the implementation of any Joint Marketing Agreement, Cross Marketing Agreement, Program Agreement, and/or Technology Agreement to which JHI and/or JHTSI was a party or signatory that was effective any time during May 22, 1998 to the present.

The subpoenas to ACE Cash Express, Inc.; Rent-a-Center; the Wal-Mart entities; General Fidelity Insurance Company; and, New Benefits, Ltd. also request all "Kiosk License Agreements." The subpoenas define the terms "Joint Marketing Agreement," "Cross Marketing Agreement," "Program Agreement," "Technology Agreement," and "Kiosk License Agreement" consistent with the definition in Plaintiff's discovery to Defendants.[13]

As this Court recently ruled, "[a] party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter. A motion to quash, or for a protective order, should generally be made by the person from whom the documents or things are requested." *Hoover v. Florida Hydro, Inc.*, 2008 WL 4467661, *3 (E.D. La. 2008) (citations omitted); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed. 1995). Moreover, a party has no standing to object to a subpoena as being burdensome to the subpoenaed party—only the subpoenaed party has standing to make such an objection. *See Weatherly v. State Farm Fire and Cas. Ins. Co.*, 2009 WL 1507353, *3 (E.D. La. 2009).

Even if the Court were to assume Defendants have sufficient interest in the subpoenaed matter to have standing to object to Plaintiff's subpoenas, Defendants'

---

[13] *Id.*, Subpoena Exhibits, at Definition (G).

objections are without merit for at least 4 reasons.

*__First__*, as this Court has ruled, parties to a lawsuit, such as Defendants, can*not* object to a subpoena being burdensome to the subpoenaed party. *Id.* Moreover, even if the subpoenas are duplicative of requests sent to Defendants, there is no evidence that the subpoenas will impose any undue burden on any of the subpoenaed parties. *See Alliance General Ins. Co. v. Louisiana Sheriff's Automobile Risk Program*, 1999 WL 221120, *2 (E.D. La. 1999) ("The Court agrees with plaintiff with regard to the RHA subpoena. Although defendants argue that the discovery request is duplicative, the defendants have not demonstrated an undue burden.").

*__Second__*, the subpoenas request relevant documents. Like the discovery issued to Defendants, the subpoenas seek certain identified or readily identifiable agreements and documents relating to Defendants' sharing of confidential customer information with third parties. As with the discovery issued to Defendants, the subpoenas are properly limited in time to the 10-year period prior to the filing of Plaintiff's complaint.

*__Third__*, Defendants rely upon *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004), *but the case actually supports Plaintiff's position*. In *Wiwa*, the Fifth Circuit ordered the production of all "corporate documents that (1) pertain solely to Oteri's position as security coordinator at Shell *and* (2) relate to Shell's alleged interactions with the Nigerian government and its treatment of the Ogoni." *Wiwa*, 392 F.3d at 821. As in *Wiwa*, Plaintiff's subpoenas are similarly limited as they only seek all contracts with Defendants, and any documents explaining such contracts.

*__Fourth__*, any concerns Defendants have about the production of documents

containing trade secrets can be addressed through entry of a reasonable stipulated confidentiality order.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Protective Order and Motion to Quash.

Respectfully Submitted,

/s/ Bryan C. Shartle
David Israel (LSBA No. 7174) (T.A.)
Bryan C. Shartle (LSBA No. 27640)
Justin H. Homes (LSBA No. 24460)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
3850 N. Causeway Blvd.
Lakeway II, Suite 200
Metairie, Louisiana 70002
Telephone: (504) 828-3700
Facsimile: (504) 828-3737

Attorneys for Plaintiff,
Vicki L. Pinero

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record ✓ by ECF; __ by email; __ by hand; __ by fax; __ by FedEx; __ by placing a copy of same in the U.S. Mail, postage prepaid this 27th day of August 2009.

/s/ Bryan C. Shartle
Bryan C. Shartle

N:\1-DI-Non-Collector-Misconduct\Pinero, Vicki-Class Action\Pleadings\LA Lawsuit\Opposition To Quash Motion\Memo. in Opp. to Quash.08.27.09.doc