UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VICKI L. PINERO, *et al.*, | ) | Civil Action No. 08-03535 |
| | ) | |
| Plaintiffs, | ) | Sec. R |
| | ) | JUDGE SARAH S. VANCE |
| v. | ) | |
| | ) | Mag. 3 |
| JACKSON HEWITT TAX SERVICE | ) | MAGISTRATE JUDGE DANIEL E. |
| INC., *et al.*, | ) | KNOWLES, III |
| | ) | |
| Defendants. | ) | |

## REPLY TO MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH AMENDED CLASS ACTION COMPLAINT

Plaintiff, Vicki L. Pinero ("Plaintiff"), submits this reply to the memorandum filed by defendants Jackson Hewitt Tax Service Inc. and Jackson Hewitt Inc. (jointly referred to as "Defendants") in opposition to Plaintiff's Motion for Leave to File Fourth Amended Class Action Complaint.

Crescent City Tax Service, Inc. d/b/a Jackson Hewitt Tax Service ("CCTSI") did not file an opposition to Plaintiff's leave motion, so presumably CCTSI does *not* oppose Plaintiff's leave motion.

1

Dockets.Justia.com

# I. LAW AND ARGUMENT

Notwithstanding Defendants' attempts to misdirect, the real issue before the Court is whether Plaintiff should be granted leave to amend her complaint to, *inter alia*, include 3 new counts. This Court recently described the standard for granting leave under Fed. R. Civ. P. 15 as follows:

> Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading should "be freely given when justice so requires." This, and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Thus, Rule 15(a) states a liberal amendment policy, and *a motion to amend should not be denied absent a substantial reason to do so*.

*Hibbets v. Lexington Ins. Co.*, 2009 WL 1668505, *3 (E.D. La. 2009) (emphasis added). As described by one court, the liberal amendment policy is "to be applied with *extreme liberality*." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (emphasis added). "[Rule 15's] purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." C. Wright, A. Miller, M. Kane, 6 Fed. Prac. & Proc. Civ.2d § 1471.

As Judge Vance has noted, "[t]he Supreme Court has held that '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim on the merits.'" *Nguyen v. St. Paul Travelers Inc. Co.*, 2007 WL 3275133, *7 (E.D. La. 2007); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court should grant plaintiff's leave motion for the following reasons:

## A. Plaintiff Is Entitled To Leave To Amend Under Rule 15(a)

Apparently afraid of the consequences if Plaintiff's substantive claims get before this Court, Defendants continue to avoid and obfuscate the real issues. They grumble about Plaintiff's conscientious development of her case as somehow reflecting "delay and bad faith," while at the same time they stonewall Plaintiff's legitimate discovery requests. To date, Defendants have **_not_** produced a single document.[1]

In fact, the more one scratches the surface of Defendants' "business practices," third-party agreements, and disclosures to clients, the more apparent it becomes that Defendants have long structured into their business model roadblocks to discourage and delay customers, like Plaintiff, from being able to seek deserved redress. Defendants' real problem in this case is that they face a Plaintiff that cannot be "run-off."

---

[1] In their opposition memorandum, Defendants continue to sling mud and now accuse Plaintiff of acting in "bad faith." *See* Docket No. 180, at p. 2. Defendants have engaged in a "scorched earth" campaign involving such tactics as: accusing undersigned counsel of violating court orders and unethical conduct, and going so far as stating they are reserving their rights to seek "sanctions"; unilaterally setting Plaintiff's deposition in *Baton Rouge* on the same day Plaintiff's motion for leave is set for hearing, knowing that lead counsel cannot attend both; objecting to providing information regarding Defendants' document retention policies, even though this case involves improper disposal of documents; refusing to turnover a single document, including Defendants' own insurance policy, absent entry of a confidentiality and protective order that grants Defendants authority *carte blanche* to designate documents as confidential and restricts Plaintiff's use of such documents; and, advising third party subpoena recipients of Defendants' motion to quash in an attempt to stop the third parties from responding to the subpoenas. Defendants also continue to argue Plaintiff has repeatedly changed the theory of her case. *See* Docket No. 180, at p. 2. Defendants' characterization of the history of this case is inaccurate. It is time for Defendants' antics to stop.

Contrary to Defendants' false and inflammatory statements, there is no evidence of undue delay or bad faith on Plaintiff's part.  To the contrary, Plaintiff has completed her amendments in an efficient and timely manner.  Plaintiff sought leave to amend *before* the pleadings-amendment deadline and discovery just commenced, with Defendants serving their initial disclosures merely *2 days ago* on September 2, 2009. Any delay on undersigned counsel's part in seeking leave to amend can*not* be considered "undue" and deserving of denial.  *See Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982) ("Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant.").

Further, neither Plaintiff, nor undersigned counsel, has withheld asserting any claims as a litigation tactic.  As the Court is well aware, and as the record establishes, this matter involves complex legal issues.  And multiple amended complaints are ***not*** unusual in such matters.  In fact, this Court recently granted leave to the plaintiffs in *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 574729 (E.D. La. 2004) to file a ***sixth amended class action complaint***.[2]

Nor will Defendants suffer any "prejudice" if leave is granted.  "A court evaluates the prejudicial effect of an amendment by looking at the nature of the amendment and its timing."  *Cappetta v. GC Services Ltd. Partnership*, 2009 WL 482474, *6 (E.D. Va. 2009).  Considering that (a) Defendants have been aware of the proposed claims for some

---

[2] *See also Clark v. America's Favorite Chicken Co.*, 896 F.Supp. 611 (E.D. La. 1995) (fifth amended complaint); *Forbes v. Eagleson*, 228 F.3d 471, 478 (3d Cir. 2000) (fifth amended class action complaint); *National Farmers' Organization, Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1310 n. 48 (8th Cir. 1988) (same).

time, (b) Defendants' concerted efforts to keep their wrongful actions secret have contributed to the delay, and (c) the case is still in its infancy, Defendants will not suffer any meaningful prejudice if leave is granted.

In contrast, Plaintiff will be prejudiced if the Court denies her leave because she will be forced to litigate with the same parties in two separate lawsuits. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("[The] court may weigh in the movant's favor any prejudice that will arise from denial of leave to amend. That consideration arises only if there are substantial reasons to deny the amendment.") (citation omitted).

"In keeping with the purposes of [Rule 15(a)], the court should [also] consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation." *Great American Ins. Co. of New York v. CIMA Companies, Inc.*, 2007 WL 4219180, *2 (E.D. La. 2007). Plaintiff is promoting judicial efficiency. Plaintiff could have asserted her proposed new claims in a separate lawsuit. For the sake of judicial efficiency, however, Plaintiff is seeking leave to amend her current lawsuit and have all legal issues addressed in one lawsuit.

Considering Plaintiff timely sought leave to amend before the pleadings-amendment deadline, and the *lack of* any concomitant prejudice to Defendants, the Court should freely grant Plaintiff leave to amend her complaint. Further, as explained below, Plaintiff's proposed amendments would ***not*** be "futile," as the claims are ***not*** subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### B. Plaintiff Has Properly Plead Her Claims

A reoccurring theme throughout Defendants' opposition is the belief that recent case law requires detailed factual pleadings in order to survive a motion to dismiss. This is not true. The Supreme Court has ruled "a complaint attacked by a Rule 12(b)(6) motion to dismiss does *not* need detailed factual allegations[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).

Although recent case law has clarified the pleading standard, as the Fifth Circuit recently noted, in "*Twombly* [the Supreme] Court pointed out that its 'plausibility' standard is *not* a heightened pleading standard beyond what the Federal Rules of Civil Procedure had always required." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 259 n. 29 (5th Cir. 2009) (emphasis added). Fed. R. Civ. P. 8(a)(2) still only requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Under Rule 8(a)(2), "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation marks and ellipses omitted). "It is not necessary for the plaintiff to plead all elements of h[er] prima facie case in the complaint, or 'plead law or match facts to every element of a legal theory[.]'" *Myvett v. Williams*, 2009 WL 2358589, *2 (D. D.C. 2009) (citations omitted) (gathering authorities).

Given the simplified notice pleading standard, motions to dismiss are still "viewed with disfavor and [are] rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *see also Shields v. Allstate Ins. Co.*, 2008 WL 3884326, *1 (E.D. La. 2008). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must [only]

plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Said another way, "a claim should *not* be dismissed unless the court determines that it is *beyond doubt* that the plaintiff *cannot* prove a *plausible set of facts* that support the claim and would justify relief." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (emphasis added). Plaintiff has satisfied this pleading standard.

### C. Plaintiff Has Stated Claims For Violations of Loan Broker Statute (La. Rev. Stat. § 51:1910, Et Seq.) (Proposed Count 10)

Defendants make 4 arguments regarding Plaintiff's § 51:1910 claims in proposed Count 10. **_First_**, Defendants contend Plaintiff has not asserted sufficient facts to establish Defendants are loan brokers. *See* Docket No. 180, at pp. 7-9. **_Second_**, Defendants argue a statutory exception applies. *Id.* at p. 6. **_Third_**, Defendants allege Plaintiff cannot assert any claims under the statute because Plaintiff does not allege she notified Defendants, or anyone else, of her intent to void her loan brokering contract, as allegedly required by § 51:1915(B). *Id.* at p. 9. **_Fourth_**, Defendants aver Plaintiff cannot assert a class action under § 51:1915. *Id.* at p. 11. Defendants are wrong on all 4 points.

#### 1. The Court Must Assume Defendants Are Loan Brokers And The Statutory Exception Does Not Apply

"It is black-letter law that a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to be evaluated only on the pleadings." *Gaspard v. Our Lady of Lourdes Regional Medical Center, Inc.*, 2009 WL 798818, *2 (W.D. La. 2009); *see also St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991) ("A court which considers a motion for a 12(b)(6) or 12(c) dismissal must look only at

the pleadings and accept all allegations in them as true.").  When deciding a motion to dismiss, "[t]he court 'accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  The court must "resolve all ambiguities or doubts regarding the sufficiency of the complaint in the plaintiff's favor."  *Shields*, 2008 WL 3884326 at *1.

Defendants ask the Court to disregard the foregoing bedrock and "black-letter law" principles by (a) ignoring the well-plead facts in Plaintiff's proposed amended complaint and (b) considering and evaluating alleged facts and documents outside the pleadings.  The Court should reject Defendants' arguments.

### a. Defendants Are Loan Brokers

Plaintiff has properly plead Defendants are loan brokers.  Under La. Rev. Stat. § 51:1910(1)(a)(i), a "loan broker" is "any person, firm, or corporation who, ***in return for any consideration*** from any person, promises to . . . [p]rocure for such person, or assist such person in procuring a loan from any third party[.]" (emphasis added).  Although Defendants accuse Plaintiff of making "conclusory allegations," Defendants are wrong. Plaintiff properly and clearly alleges Defendants are "loan brokers" as follows: "Defendants are loan brokers per La. Rev. Stat. § 51:1910 because they, in return for consideration from customers, procure for customers loans from third parties."  Docket No. 173-2, at ¶ 118.

Notwithstanding Plaintiff's well-pleaded complaint, Defendants argue the Court should ignore Plaintiff's factual allegations and rule Defendants are not loan brokers under § 51:1910(1)(a)(i) because, according to Defendants, there was no fee

agreement/contract between Plaintiff and Defendants. *See* Docket No. 180, at p. 8. The Court should again reject Defendants' argument.

Plaintiff properly and clearly alleges: "Based upon a fee agreement/contract, each of the Defendants charged *and* received a fee/sum from [her] for brokering [her] Pre-File Money Now Loan." Docket No. 173-2, at ¶ 69; *see also* ¶¶ 26 and 70. Although Defendants argue "[n]o facts are alleged to support [this] [alleged] bare assertion," Plaintiff is dumbfounded as to how her well-plead factual allegation can be more clearly stated. Defendants are simply attempting to hold Plaintiff to an improper and heightened pleading standard, which the Court should reject. Simply put, "[a] legally sufficient complaint does not need to contain detailed factual allegations[.]" *Quatroy v. Jefferson Parish Sheriff's Office*, 2009 WL 1380196, *2 (E.D. La. 2009). The complaint "need only give the defendant[s] fair notice of what the claim is and the grounds upon which it rests." *Davis v. Evangelist*, 2009 WL 2447897, *2 (E.D. La. 2009) (quotation marks omitted).

Cherry picking language from Plaintiff's loan agreement, Defendants argue the "Bank Fee" a customer must pay to obtain a loan "pertain[s] only to the putative existence of a contract or the putative payment of a fee related to [the customer's] transaction with a banking institution," and has nothing to do with Defendants. *See* Docket No. 180, at p. 8. This contention is false. As stated in Plaintiff's loan agreement, when obtaining a loan, the customer agrees that "[a] portion of the Bank Fee may be shared with Jackson Hewitt Inc. and/or the transmitter of [the loan] application." Docket No. 173-2, at ¶ 67. The evidence will show Defendants were receiving a portion of the

Bank Fee, but that issue need not be proven as this stage of the proceeding where the Court is confined to the pleadings and bound to accept the factual allegations as true. *See St. Paul*, 937 F.2d at 279; *Guidry*, 512 F.3d at 180.

Further, in determining if Defendants are loan brokers per § 51:1910(1)(a)(i), all the statute requires is that Defendants procure loans "in return for any consideration." The legislature, in their wisdom, clearly intended to defeat attempts, like that advanced herein by Defendants, to obscure substance with form. In view of Defendants' business objects and financial results, it is impossible for Defendants to assert, *and they do not assert*, that they received no consideration from customers in return for procuring loans for those customers from third parties.

### *b. The Statutory Exception Does Not Apply*

Defendants argue a statutory exception immunizes them from liability. *See* Docket No. 180, at p. 6. The exception states "[t]his Chapter shall not apply to . . . [a]ny person whose fee is wholly contingent on the successful procurement of a loan from a third party *and* to whom no fee is paid prior to such procurement[.]" La. Rev. Stat. § 51:1910(1)(b)(viii) (emphasis added). As the statutory language indicates, the exception ***only applies if*** (a) the person's fee is wholly contingent on the successful procurement of the loan ***and*** (b) no fee is paid to the person prior to such procurement. *Id.*

In her proposed complaint, Plaintiff properly and clearly alleges:

> Defendants charge and receive from their customers various fees, sums, interest, and charges for brokering RALs; Pre-File Money Now Loans; Holiday or HELP Loans; Flex Loans; iPower Loans; and, other non-RAL loans. *These fees and sums are **not** wholly contingent on the successful procurement of the loan.*

10

Docket No. 173-2, at ¶ 45 (emphasis added). Based upon these allegations, the statutory exception Defendants rely upon is *in*applicable because Defendants fail to satisfy the first part of the 2-part conjunctive test for the exception to apply—Defendants' fee is ***not*** "wholly contingent on the successful procurement of a loan," as required under part one of the 2-part statutory exception in § 51:1910(1)(b)(viii).

Defendants argue "Plaintiff paid no fee prior to the procurement of the loan, and any fees associated with Plaintiff's loan were paid directly from the loan proceeds." Docket No. 180, at p. 6. Even if the Court could consider these allegations, which it cannot on a motion to dismiss standard, the allegations do *not* support Defendants' argument that the statutory exception applies because, as noted, Defendants can*not* satisfy part one of the 2-part test. Moreover, the fact that Defendants' fees may be paid out of the loan proceeds is irrelevant if such fees are owed (as alleged) *regardless of whether the loan is procured*. In other words, "how" the fees are paid is irrelevant—the statute only focuses on whether an obligation to pay exists regardless of whether the loan is procured (Part 1 of the Test) and "when" the payment is made (Part 2 of the Test).

Defendants also argue the Court should ignore Plaintiff's well-plead allegations. *See* Docket No. 180, at p. 6. Again, Defendants' position is contrary to the rule that a "district court [deciding a motion to dismiss] must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Bill Ward Builders, LLC v. Low Group, Inc.*, 2009 WL 2370678, *1 (E.D. La. 2009).

Even if the Court were to ignore Plaintiff's allegations, however, it is

inappropriate to rule on the applicability of the statutory exception on a motion to dismiss. It is well-settled that "[c]omplaints need not anticipate, and attempt to plead around, potential affirmative defenses." *Lewis v. Cain*, 2009 WL 1674805, *1 (M.D. La. 2009); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "The [plaintiff] is not required to plead on the subject of an anticipated affirmative defense." *U.S. v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993). A court should "not dismiss a complaint (or claims) in instances where such dismissal would be tantamount to forcing a plaintiff to plead allegations to deny an affirmative defense." *Sycamore Indus. Park Associates v. Ericsson, Inc.*, 2007 WL 1266296, *2 (N.D. Ill. 2007).

It is Defendants' affirmative burden to establish whether the statutory exception applies. In light of this fact, the Court should reject Defendants' argument that Plaintiff has failed to state claims under § 51:1910 because Plaintiff has not "plead around" the statutory exception in § 51:1910(1)(b)(viii).

### 2. Plaintiff Has Sufficiently Alleged That She Provided Written Notice To Defendants Of Her Intent To Void Her Loan Brokering Contract With Defendants

In their continued effort to create new "pleading requirements," Defendants argue Plaintiff cannot assert a claim under § 1915(B) because "Plaintiff does not allege that she notified [Defendants], or anyone else, of her intent to void [her] [loan brokering] contract, as [allegedly] required by § 51:1915(B)." Docket No. 180, at p. 9. It is true that § 51:1915(B) provides, "[i]f a loan broker . . . fails to fully comply with the requirements of this Chapter, . . . then, *upon written notice to the broker*, the prospective borrower may void the contract, and shall be entitled to receive from the broker all sums paid to the

broker, and recover any additional damages including attorney's fees."  La. Rev. Stat. §

51:1915(B) (emphasis added).  The written notice requirement does ___not___ apply once the

consumer obtains the loan.  Assuming the written notice requirement applies ___after___ the

consumer obtains the loan, the statute does ___not___ require a plaintiff to *plead* she provided

written notice to the loan broker before commencing a lawsuit under § 1915(B).

 ___Most importantly___, prior to filing her proposed amended complaint, Plaintiff

(through undersigned counsel) provided written-notice to Defendants (through

Defendants' counsel) of Plaintiff's intent to void her loan brokering contract with

Defendants.  As alleged in Plaintiff's L.R. 7.6 Certificate, prior to filing Plaintiff's leave

motion, undersigned counsel provided a copy of Plaintiff's proposed amended complaint

to Defendants' counsel.  *See* Docket No. 173-4.  The proposed amended complaint was

forwarded with an email, advising opposing counsel that Plaintiff would be filing her

leave motion to add additional claims, unless undersigned counsel heard from opposing

counsel.  Opposing counsel never responded, so Plaintiff filed her motion.  Plaintiff's

actions constitute written notice per § 51:1915(B).

 Defendants' reliance upon *Shoemaker v. Fidelity Finance, Inc. of Zachary*, 464

So.2d 1005 (La.App. 1st Cir. 1985), is misplaced for at least 3 reasons.  ___First___, contrary to

the facts in *Shoemaker*, Plaintiff provided written notice before filing her complaint.

 ___Second___, although Defendants allege *Shoemaker* involved a "similar loan broker

statute," the truth is the case involved application of La. Rev. Stat. § 9:3552 and did *not*

involve a "loan broker," as Defendants lead the Court to believe.  Section 9:3552, which

applies to "extenders of credit" and has detailed procedural requirements, stands in stark

contrast to § 51:1915, which only requires "written notice." Further, unlike § 9:3552, section 51:1915 is *not* a "penal statute."

**_Third_**, Courts routinely rule that written notice requirements are unnecessary when application of the rule would lead to absurd consequences under Civil Code Article 9. *See*, *e.g.*, *Frank v. Tran*, 07-983 (La.App. 3d Cir. 1/30/08), 974 So.2d 861, 867 ("In this instance, a determination that Mr. Tran is precluded from pursuit of his New Home Warranty Act claims for failure to provide this type of technical notice in the face of actual verbal and written notice would lead to an absurd consequence.").

### *3. There Is No Prohibition To Class Actions Under § 51:1915*

Defendants argue Plaintiff cannot assert a class action under § 51:1915. *See* Docket No. 180, at p. 11. Contrary to Defendants' argument, there is no prohibition in § 1915 to asserting class actions. It is true that a violation of any of the provisions set forth in La. Rev. Stat. § 51:1910, *et seq.*, constitutes a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. § 51:1401, *et seq.* *See* La. Rev. Stat. § 51:1915(A). It is also true that class actions cannot be asserted under LUTPA, but this fact is irrelevant because Plaintiff does **_not_** seek leave to assert a class action under LUTPA. Instead, *inter alia*, Plaintiff seeks leave to add Count 10 and assert individual and class claims for violations of both §§ 51:1915(A) and (B). *See* Docket No. 173-2, at ¶¶ 117-122.

### _D. Plaintiff Has Stated A Claim For Rescission Of Unlawful Fee Agreement/Contract (Proposed Count 11)_

Defendants make 3 arguments regarding Plaintiff's rescission claim in proposed

Count 11. **_First_**, Defendants contend the claim is futile because this Court previously ruled that an equitable claim such as rescission is unavailable when a statutory remedy exists. *See* Docket No. 180, at p. 9. **_Second_**, Defendants allege Plaintiff fails to adequately allege Defendants were parties to a loan brokering agreement, so there is no loan brokering agreement to rescind. *Id.* at pp. 9-10. **_Third_**, Defendants argue, because Plaintiff fails to state a claim under the second loan broker statute (*i.e.*, La. Rev. Stat. § 51:1910, *et seq.*) in Count 10, Plaintiff's claim in Count 11 fails because the claim is allegedly solely based upon a violation of this second loan broker statute. *Id.* at p. 9, n. 7. Defendants are again wrong.

### 1. This Court Did Not Previously Rule On Whether Defendants' Unlawful Fee Agreement/Contract Could Be Rescinded As An Absolutely Null Contract Per Civil Code Articles 7 And 2030

Incredibly, Defendants represent this Court "previously held [that] an equitable claim such as rescission is not available where a statute plainly lays out the legal rights a party may have." *Id.* at p. 9. This Court said nothing of the sort.

In his April 21, 2009 ruling, Judge Knowles concluded, "[b]ecause plaintiff has a *delictual* cause of action, she is precluded from having an equitable remedy for unjust enrichment." Docket No. 117, at p. 8. Judge Knowles correctly ruled that a plaintiff can*not* assert a claim for "enrichment without cause" under Civil Code Article 2298 when there is an adequate remedy at law. Civil Code Article 2298 makes this abundantly clear. *See* La. Civ. Code art. 2298 ("The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.").

The limitation Judge Knowles discussed, however, does ***not*** apply to claims for rescission of absolutely null contracts under Civil Code Articles 7 and 2030. Nor does the limitation apply to claims for payment of a thing not owed under Article 2299. *See* La. Civ. Code art. 2299, Comment (c).

As the Fifth Circuit and Judge Vance have ruled, Articles 7 and 2030 relate to the invalidity of contracts that violate rules of "public order." *See Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC*, 2009 WL 2371427 (5th Cir. 2009); *Touro Infirmary, Preferred Continuum Care-New Orleans, LP v. Travelers Prop. Cas. Co. of America*, 2007 WL 496858 (E.D. La. 2007). Claims under these articles do *not* prescribe. *See* La. Civ. Code art. 2032. And such claims are certainly *not* subsidiary, as Defendants allege.

### *2. Plaintiff Alleges Defendants Were Parties To A Loan Brokering Agreement*

Defendants continue on their quest to create a heightened pleading standard, arguing "Plaintiff does not allege sufficient facts to conclude that a loan brokering agreement existed at all, let alone one that should be declared null and void." Docket No. 180, at p. 9. Defendants ignore Plaintiff's allegations.

As noted above, Plaintiff properly and clearly alleges: "Based upon a fee agreement/contract, each of the Defendants charged *and* received a fee/sum from [Plaintiff] for brokering [her] Pre-File Money Now Loan." Docket No. 173-2, at ¶ 69; *see also* ¶¶ 26 and 70. Contrary to Defendants' argument, Plaintiff alleges Defendants

were parties to a loan brokering agreement.[3]

### *3. Plaintiff's Rescission Claim Is Not Solely Based Upon A Violation Of La. Rev. Stat. § 51:1910, Et Seq.*

Defendants argue, "[i]f Plaintiff fails to state a claim under [La. Rev. Stat. § 51:1910, *et seq.*] in Count 10, then Counts 11 and 12, which are predicated on a claim that [Defendants] violated that statute, also fail to state a claim, and therefore are futile in their entirety." Docket No. 180, at p. 9, n. 7. Defendants again ignore Plaintiff's allegations.

Counts 11 and 12 are based upon Defendants' violations of ***both*** loan broker statutes, *i.e.*, La. Rev. Stat. § 9:3572.1, *et seq.*, and La. Rev. Stat. § 51:1910, *et seq. See* Docket No. 173-2, at ¶¶ 123-131. As alleged, Defendants are ***not*** licensed as loan brokers, and Defendants have ***not*** obtained a surety bond or established a trust account, as required by La. Rev. Stat. § 9:3572.1, *et seq.*, and La. Rev. Stat. § 51:1910, *et seq. Id.* at ¶¶ 5 and 44. Nor have Defendants provided the disclosures required by these statutes. *Id.* at ¶¶ 5, 69-70, and 119. Therefore, any fee agreement/contract with Defendants that permits Defendants to receive a fee for brokering a loan is unlawful and subject to rescission as an absolutely null agreement/contract per Articles 7 and 2033. *Id.* at ¶ 125.

---

[3] Defendants attempt to distinguish *Tradewinds Environmental Restoration* and *Touro Infirmary* is equally unavailing. *See* Docket No. 180, at p. 10, n. 8. According to Defendants, the cases are irrelevant because, unlike the defendants in those cases, they are not parties to any unlawful contract. *Id.* Defendants ask this Court to ignore the appropriate motion to dismiss standard and find they are not a "party" to a loan broker contract, even though Plaintiff has alleged the existence of a contract with Defendants and that Defendants received certain fees for brokering her loan. *See* Docket No. 173-2, at ¶ 69; *see also* ¶¶ 26 and 70. Defendants' argument is illogical.

Indeed, even if the Court ruled Plaintiff fails to state a claim under La. Rev. Stat. § 51:1910, *et seq.*, such a finding would ***not*** require dismissal of Plaintiff's proposed claims under proposed Counts 11 and 12 because these claims are not solely based upon Defendants' violation of La. Rev. Stat. § 51:1910, *et seq.* As noted, the claims are also based upon Defendants' violations of the first loan broker statute, *i.e.*, La. Rev. Stat. § 9:3572.1, *et seq.*

### E. Plaintiff Has Stated A Claim For Payment Of A Thing Not Owed (Proposed Count 12)

Defendants appear to make 3 arguments regarding Plaintiff's payment of a thing not owed claim in proposed Count 12. ***First***, Defendants contend the claim is precluded by Judge Knowles' April 21, 2009 order. *See* Docket No. 180, at p. 10. ***Second***, Defendants argue the claim is dependent upon proposed Count 10, which fails to state a claim, and thus the claim likewise fails. *Id.* at p. 9, n. 7. ***Third***, Defendants contend the claim fails because Plaintiff failed to specifically plead Defendants "received a payment or a thing not owed[.]" *Id.* at p. 10. Defendants are again wrong.

As discussed above, Judge Knowles did *not* rule an Article 2299 claim is precluded because of an adequate remedy at law. *See* Docket No. 117, at p. 8. Instead, Judge Knowles' preclusion ruling was limited to an Article 2298 claim for enrichment without case. As noted, a claim for payment of a thing not owed is ***not*** subsidiary. *See* La. Civ. Code art. 2299, Comment (c) ("The remedy that Article 2299 provides is *not* subsidiary; this remedy is available even if other remedies are also available but there can be no double recovery.") (emphasis added).

18

Further, as explained above, Plaintiff's claim for payment of a thing not owed is based upon Defendants' violations of ***both*** loan broker statutes.  *See* Docket No. 173-2, at ¶¶ 128-131.  As alleged, Defendants improperly charged and received from Plaintiff and the other class members certain fees, sums, interest, and other charges relating to their improper loan brokering activity.  *Id.* at ¶¶ 5, 45, 69-70, 120-122, 127, and 131.  Considering Defendants were prohibited from contracting to receive and from actually receiving any fee or sum for their loan brokering activity because they were not in compliance with the loan broker statutes, *see* La. Rev. Stat. § 9:3572.12(D); La. Rev. Stat. § 51:1915(B); La. Rev. Stat. § 51:1911(E), Defendants are obligated to return all such fees, sums, interest, and charges they improperly received from Plaintiff and the other class members per Article 2299. *Id.* at ¶¶ 130-131.[4]

As to Defendants' argument that Plaintiff has not properly plead a claim for payment of a thing not owed, Defendants misunderstand Rule 8(a).  Rule 8(a) does *not* require "technical pleadings"; instead, "Rule 8(a)(2) codifies 'notice pleading,' requiring that the complaint provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Jones v. Phillips & Jordan, Inc.*, 2007 WL 3046172, *2 (E.D. La. 2007).  However, even if Rule 8(a) required "technical pleadings," which it does *not*, Plaintiff has properly and clearly asserted a claim for payment of a thing not owed by alleging:  "Defendants received certain fees, sums, interest, and other

---

[4] Defendants again attempt to distinguish the relevant cases, including *United Gas Pipe Line Co. v. Socony Mobil Oil Co.*, 220 F.Supp. 685 (W.D. La. 1963), based upon an unfounded allegation that no fee agreement/contract existed with any of their customers to broker a loan.  *See* Docket

charges they are not owed relating to their loan brokering activity. Pursuant to Article 2299, Defendants are obligated to return all such fees, sums, interest, and charges to the class members." Docket No. 173-2, at ¶ 131.

## *F. Plaintiff Should Be Granted Leave To Make The Other Proposed Amendments*

With "slight of hand," Defendants argue Plaintiff should be denied leave to expand her request for declaratory and injunctive relief to address Defendants' improper loan brokering activity. *See* Docket No. 180, at pp. 11-12. Throughout their brief, Defendants refer to the second loan broker statute, *i.e.*, La. Rev. Stat. § 51:1910, *et seq.*, as the "LUTPA Loan Broker Statute." *Id.* at p. 4. Using this confusing title as an apparent attempt to limit Plaintiff's claim, Defendants argue Plaintiff's request to plead expanded declaratory and injunctive relief should be denied because, "[u]nder LUTPA, the state alone is entitled to injunctive relief." *Id.* at p. 11. Even if this is true, Defendants' point is irrelevant.[5] Plaintiff's request for expanded declaratory and injunctive relief is ___*not*___ sought under the unfair trade practices act—LUTPA.

Instead, Plaintiff seeks expanded declaratory relief per Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 and expanded injunctive relief per Fed. R. Civ. P. 65, based upon Defendants' violations of both loan broker statutes. *See* Docket No. 173-2, a ¶¶ 108-111. Plaintiff is entitled to such relief directly under the second loan broker statute. *See* La.

---

No. 180, at pp. 10-11, n. 9. But again this contention is false and flies in the face of Plaintiff's allegations. *See* Docket No. 173-2, at ¶¶ 5, 45, 69-70, 120-122, 127, and 131.
[5] Despite Defendants' argument that injunctive relief is not available under LUTPA, this Court has indicated that such relief may be available. *See Oreck Corp. v. Bissell, Inc.*, 1999 WL 163389, *2-3 (E.D. La. 1999) (gathering authorities).

Rev. Stat. § 51:1915(D) ("The remedies provided herein ***shall be in addition to*** any other remedies provided for by law.") (emphasis added).  Plaintiff is also entitled to such relief as a matter of law for her proposed non-statutory claims, *i.e.*, proposed Counts 11 and 12.

Defendants also object to Plaintiff's request to amend and expand her class definition.  *See* Docket No. 180, at p. 13.  Defendants' objections are without merit, as class definitions are commonly changed, often without formal amendment to the pleadings.  *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004).  Plaintiff seeks leave to add:  proposed class definition A to better define the fraud class members and proposed class definition C to define the class members with claims regarding Defendants' unlawful loan brokering activity.  Defendants do *not* object to class definition B, which is the definition included in the current complaint.  The requested leave to amend the class definitions should be granted.

As to adding Erick G. Adkins as a plaintiff for proposed Counts 10-12, Defendants only objection is the amendment should be denied as futile because the proposed claims fail as a matter of law.  *See* Docket No. 180, at p. 2, n. 1.  As explained above, the proposed claims are viable, so leave to make the requested amendment should be granted.

## II. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for leave.

Respectfully Submitted,

/s/ Bryan C. Shartle
David Israel (LSBA No. 7174) (T.A.)
Bryan C. Shartle (LSBA No. 27640)
Justin H. Homes (LSBA No. 24460)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
3850 N. Causeway Blvd.
Lakeway II, Suite 200
Metairie, Louisiana 70002
Telephone: (504) 828-3700
Facsimile: (504) 828-3737

Attorneys for Plaintiff,
Vicki L. Pinero

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record ✓ by ECF; __ by email; __ by hand; __ by fax; __ by FedEx; __ by placing a copy of same in the U.S. Mail, postage prepaid this 4th day of September 2009.

/s/ Bryan C. Shartle
Bryan C. Shartle

N:\1-DI-Non-Collector-Misconduct\Pinero, Vicki-Class Action\Pleadings\LA Lawsuit\Fourth Amended Complaint\Reply.09.04.09.doc